**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JESSICA KRAMER,
                          *Plaintiff*,

            and

ALEXSANDRA DEL REAL; MICHAEL
CHOI; MICHAEL SCHOLTEN,
Individually and on Behalf of All
Others Similarly Situated; LU LI,
            *Plaintiffs-Appellees*,

            v.

TOYOTA MOTOR CORPORATION, a
Japanese corporation / a foreign
corporation, DBA Toyota Motor
North America, Inc.; TOYOTA
MOTOR SALES, U.S.A., INC., a
California corporation / a foreign
corporation,
            *Defendants-Appellants*.

No. 12-55050

D.C. No.
8:10-ml-02172-
CJC-RNB

OPINION

Appeal from the United States District Court
for the Central District of California
Cormac J. Carney, District Judge, Presiding

Argued and Submitted
October 11, 2012—Pasadena, California

Filed January 30, 2013

Before: Andrew J. Kleinfeld and M. Margaret McKeown,
Circuit Judges, and Gordon J. Quist, Senior District Judge.[*]

Opinion by Judge Quist

## SUMMARY[**]

### Arbitration

The panel affirmed the district court's order denying a motion to compel arbitration.

The panel held that Toyota Motor Corporation and Toyota Motor Sales, U.S.A., Inc. may not compel plaintiffs to arbitrate their claims. The panel also held the district court had the authority to decide whether Toyota, a nonsignatory to several purchase agreements with arbitration provisions between plaintiffs and various Toyota dealerships, may compel arbitration. Finally, the panel could discern no reason that the plaintiffs should be equitably estopped from avoiding arbitration in this case.

[*] The Honorable Gordon J. Quist, United States District Court for the Western District of Michigan, sitting by designation.

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Theodore J. Boutrous Jr.; William E. Thomson; Blaine H. Evanson; Brandon J. Stoker, Gibson, Dunn & Crutcher LLP, Los Angeles, California; Michael L. Mallow; Denise A. Smith-Mars; Rachel A. Rappaport, Loeb & Loeb LLP, Los Angeles, California, for Defendants-Appellants.

Vahn Alexander; Christopher B. Hayes, Faruqi & Faruqi, LLP, Los Angeles, California; Marc L. Godino, Glancy Binkow & Goldberg LLP, Los Angeles, California, for Plaintiffs-Appellees.

**OPINION**

QUIST, District Judge:

Toyota Motor Corporation and Toyota Motor Sales, U.S.A., Inc. (collectively "Toyota" or "Defendants") seek review of the district court's denial of their motion to compel arbitration. The district court held that Toyota, a nonsignatory to several agreements with arbitration provisions between Plaintiffs and various Toyota dealerships (hereinafter "Dealerships"), could not compel Plaintiffs to arbitrate with Toyota. The district court also found that Toyota had waived any right to compel arbitration by vigorously litigating this action in district court for nearly two years.

We have jurisdiction pursuant to 9 U.S.C. § 16(a)(1)(C), which provides for immediate interlocutory appeal of a district court's denial of a motion to compel arbitration. *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 86

(2000). For the reasons set forth below, we affirm the district court's order denying Toyota's motion to compel arbitration.

## BACKGROUND

Plaintiffs are owners of Model Year 2010 Toyota Prius vehicles who purchased their new vehicles between June 2009 and February 2010 from Toyota dealerships in California, Texas, and Maryland. Plaintiffs bring this putative class action on behalf of themselves and others similarly situated who purchased or leased a Model Year 2010 Toyota Prius or Model Year 2010 Lexus HS 250h (collectively "Class Vehicles") in the United States. Plaintiffs allege that they experienced defects in their anti-lock brake systems (ABS), resulting in increased stopping distances. Plaintiffs further allege that Toyota had notice of the defect as early as July 2009 but failed to disclose the defect and continued to manufacture and sell vehicles with defective ABS. Plaintiffs assert claims for violation of California's Consumers Legal Remedies Act, Cal. Civ. Code § 1750 *et seq.*; unfair competition, Cal. Bus. & Prof. Code § 17200 *et seq.*; false advertising, Cal. Bus. & Prof. Code § 17500 *et seq.*; breach of the implied warranty of merchantability, Cal. Com. Code § 2314; and common law breach of contract.

Plaintiffs purchased their vehicles on credit by entering into either a "Retail Installment Sale Contract" or "Purchase Agreement" with their respective dealerships. The agreements (hereinafter "Purchase Agreement(s)") set forth the terms of the sales, including information regarding the purchase price, financing, insurance, warranties disclaimed by the dealer, warranties of buyer, and rescission rights. The Purchase Agreements also contained similarly worded

arbitration provisions.[1]  For example, the agreement entered by Plaintiff Michael Scholten states,

> 1. EITHER YOU OR WE MAY CHOOSE TO HAVE ANY DISPUTE BETWEEN YOU AND US DECIDED BY ARBITRATION, RATHER THAN IN COURT OR BY JURY TRIAL.
>
> 2. IF A DISPUTE IS ARBITRATED, YOU WILL GIVE UP YOUR RIGHT TO PARTICIPATE AS A CLASS REPRESENTATIVE OR CLASS MEMBER ON ANY CLAIM YOU MAY HAVE AGAINST US.  YOU WILL GIVE UP ANY RIGHT TO CLASS ARBITRATION AND TO ANY CONSOLIDATION OF INDIVIDUAL ARBITRATIONS.
>
> . . .
>
> If either you or we elect, any claims or disputes arising out of this transaction, or relating to it, will be determined by binding arbitration and not by court action.  This includes all claims and disputes arising out of, or relating to: the vehicle, your credit application, this contract, the sale or financing of the vehicle, and any collection activities.

---

[1] Toyota did not move the district court to compel arbitration of Plaintiff Jessica Kramer's claim because Kramer did not sign an agreement with an arbitration provision.

. . .

> This Arbitration Clause applies, regardless of whether the claims or disputes arise in contract, tort, statute or otherwise. It also applies to any claim or dispute about the interpretation and scope of this Arbitration Clause. It also applies to any claim or dispute about whether a claim or dispute should be determined by arbitration.
>
> Any claim or dispute is to be arbitrated by a single arbitrator who will arbitrate only your own claims and not the claims of a class of persons. You expressly waive any right you may have to arbitrate a class action.

Likewise, the arbitration clauses in the other Purchase Agreements employ the language "you" and "we" or "buyer" and "dealer" to identify who may elect arbitration. Toyota is not a signatory to any of the Purchase Agreements.

## PROCEDURAL HISTORY

On February 4, 2010, the National Highway Traffic Safety Administration announced a formal investigation into allegations that Model Year 2010 Toyota Prius hybrid vehicles experienced momentary loss of braking capability.[2]

---

[2] *See* Press Release, Nat'l Highway Traffic Safety Admin., Department of Transportation Addresses Toyota Safety Issues (Feb. 4, 2010), http://www.nhtsa.gov/PR/DOT-22-10. Plaintiffs' First Amended Complaint alleges NHTSA announced its investigation on February 3, 2010.

On February 8, 2010, Toyota voluntarily recalled the Class Vehicles to update the ABS software. Between February 8 and February 19, 2010, Plaintiffs filed separate class action lawsuits in several federal district courts. On April 9, 2010, the United States Judicial Panel on Multidistrict Litigation (JPML) issued a Transfer Order in *In re: Toyota Motor Corp. Unintended Acceleration Marketing, Sales Practices and Products Liability Litigation* (MDL 2151), pursuant to which the JPML transferred several actions to the Central District of California. On July 28, 2010, the present actions were consolidated by stipulation pursuant to 28 U.S.C. § 1407, and on November 22, 2010, the district court approved a negotiated protective order governing discovery.

On April 26, 2011, Plaintiffs filed the operative First Amended Complaint. The following day, the United States Supreme Court issued its decision in *AT&T Mobility LLC v. Concepcion*, __ U.S. __, 131 S. Ct. 1740 (2011), which abrogated *Discover Bank v. Superior Court*, 36 Cal. 4th 148 (2005), and held enforceable class action waivers in certain arbitration agreements. *Discover Bank* had previously held class action arbitration provisions unconscionable and unenforceable in consumer contracts of adhesion under certain circumstances. 36 Cal. 4th at 153.

On June 16, 2011, Toyota moved to dismiss Plaintiffs' claims pursuant to Federal Rule of Civil Procedure 12(b)(6), which the district court denied on September 12, 2011. The following day, Toyota informed Plaintiffs' counsel that Toyota intended to move to compel arbitration. On September 27, 2011, Toyota answered the First Amended Complaint, asserting arbitration as one affirmative defense. On October 10, 2011, Toyota moved to compel arbitration. The district court denied Toyota's motion on December 20,

2011, finding Toyota had waived any right to arbitrate by vigorously litigating the action, participating in discovery, and negotiating protective orders for nearly two years. The court also found that Toyota, as a nonsignatory to the Purchase Agreements between Plaintiffs and Dealerships, could not compel arbitration, and equitable estoppel did not require arbitration.

## DISCUSSION

### I.

### A.

Toyota first argues that the district court erred by deciding whether Toyota had a right to compel arbitration, contending that the Purchase Agreements commit that question to an arbitrator.

We review *de novo* district court decisions about the arbitrability of claims. *Momot v. Mastro*, 652 F.3d 982, 986 (9th Cir. 2011). With limited exceptions, the Federal Arbitration Act (FAA) governs the enforceability of arbitration agreements in contracts involving interstate commerce. *See* 9 U.S.C. § 1 *et seq.* The FAA states that "[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *Id.* § 2. The FAA reflects both a "liberal federal policy favoring arbitration," *Concepcion*, __ U.S. __, 131 S. Ct. at 1745 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)), and the "fundamental principle

that arbitration is a matter of contract," *id.* (quoting *Rent-A-Center, West, Inc. v. Jackson*, __ U.S. __, 130 S. Ct. 2772, 2776 (2010)).

The scope of an arbitration agreement is governed by federal substantive law. *Tracer Research Corp. v. Nat'l Envtl. Servs. Co.*, 42 F.3d 1292, 1294 (9th Cir. 1994). "[A]s a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1131 (9th Cir. 2000) (quoting *Moses H. Cone*, 460 U.S. at 24–25).

Nevertheless, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960). "Because arbitration is fundamentally a matter of contract, the central or primary purpose of the FAA is to ensure that private agreements to arbitrate are enforced according to their terms." *Momot*, 652 F.3d at 986 (internal quotation marks and citation omitted). Generally, the contractual right to compel arbitration "may not be invoked by one who is not a party to the agreement and does not otherwise possess the right to compel arbitration." *Britton v. Co-op Banking Grp.*, 4 F.3d 742, 744 (9th Cir. 1993). Accordingly, "[t]he strong public policy in favor of arbitration does not extend to those who are not parties to an arbitration agreement." *Comedy Club, Inc. v. Improv W. Assocs.*, 553 F.3d 1277, 1287 (9th Cir. 2009) (citation omitted).

**B.**

The first issue for review is whether the district court had authority to decide whether Toyota, a nonsignatory to the Purchase Agreements, can compel Plaintiffs to arbitrate. The district court addressed the issue in a footnote,

> While parties may agree to explicit provisions enabling the arbitrator to decide issues of the applicability and scope of an arbitration agreement, these provisions are part of the agreement and only apply to signatories. Toyota cannot invoke the right to the benefits of the Purchase Agreement because it was not a party to the agreement; thus, the threshold issue of whether Toyota, as a nonsignatory, may compel Plaintiffs to submit to arbitration under the Purchase Agreements must be decided by this Court. *Britton*, 4 F.3d at 744; *Comedy Club*, 553 F.3d at 1287. None of the cases cited by Toyota in support of its position . . . counsels otherwise, as they are inapposite to nonsignatories.

Toyota argues that because the Purchase Agreements expressly provide that the arbitrator shall decide issues of interpretation, scope, and applicability of the arbitration provision, the arbitrator should decide the issue of whether a nonsignatory may compel Plaintiffs to arbitrate.

"It is well settled in both commercial and labor cases that whether parties have agreed to 'submi[t] a particular dispute to arbitration' is typically an "'issue for judicial determination.'" *Granite Rock Co. v. Int'l Bhd. of Teamsters*,

__ U.S. __, 130 S. Ct. 2847, 2855 (2010) (citations omitted). "It is similarly well settled that where the dispute at issue concerns contract formation, the dispute is generally for courts to decide." *Id.* at 2855–56 (citations omitted). As explained in *First Options of Chicago, Inc. v. Kaplan*, "[c]ourts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clea[r] and unmistakabl[e]' evidence that they did so." 514 U.S. 938, 944 (1995) (quoting *AT&T Techs., Inc. v. Commc'n Workers of Am.*, 475 U.S. 643, 649 (1986)); *see also Granite Rock*, 130 S. Ct. at 2856 n.5. "In this manner the law treats silence or ambiguity about the question '*who* (primarily) should decide arbitrability' differently from the way it treats silence or ambiguity about the question '*whether* a particular merits-related dispute is arbitrable because it is within the scope of a valid arbitration agreement'—for in respect to this latter question the law reverses the presumption." *First Options*, 514 U.S. at 944–45 (citing *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985)) (emphasis in original).

Here, the arbitration agreements do not contain clear and unmistakable evidence that Plaintiffs and Toyota agreed to arbitrate arbitrability. While Plaintiffs may have agreed to arbitrate arbitrability in a dispute with the Dealerships, the terms of the arbitration clauses are expressly limited to Plaintiffs and the Dealerships. For example, Scholten's arbitration clause states that "[e]ither you or we may choose to have any dispute between you and us decided by arbitration." The language of the contracts thus evidences Plaintiffs' intent to arbitrate arbitrability with the Dealerships and no one else. The Dealerships are not a party to this

action.[3]  *See Momot*, 652 F.3d at 987.  Given the absence of clear and unmistakable evidence that Plaintiffs agreed to arbitrate arbitrability with nonsignatories, the district court had the authority to decide whether the instant dispute is arbitrable.  *See United Bhd. of Carpenters and Joiners of Am. v. Desert Palace, Inc.*, 94 F.3d 1308, 1310 (9th Cir. 1996).

This court addressed a similar issue in *Mundi v. Union Security Life Insurance Co.*, 555 F.3d 1042 (9th Cir. 2009). In *Mundi*, the arbitration provision defined a dispute as a disagreement between the two contract signatories—Wells Fargo and the borrower.  *Id.* at 1045.  The court found that the nonsignatory-defendant could not compel arbitration because the arbitration agreement, by its terms, did not apply to the nonsignatory.

> The arbitration agreement is premised on a disagreement between Wells Fargo and the borrower.  In the absence of such a disagreement, the arbitration provision does not apply.  Thus, any disagreement between the borrower and a third party, such as [the defendant], is simply not within the scope of the arbitration agreement, even if it is related

---

[3] The scope of the arbitration provisions in the Purchase Agreements does extend to assignees.  The Scholten Purchase Agreement, for example, encompasses disputes between "you" [Plaintiffs] and "anyone to whom we [Dealerships] transfer this contract, whether or not they sign this contract" or "our [Dealerships'] employees and agents."  Toyota does not, however, contend that it is a transferee, employee, or agent of the Dealerships.

in some attenuated way to . . . the arbitration provision.

*Id.*

As applied to this case, it makes no difference that Plaintiffs and Toyota disagree over the arbitrability of the arbitration agreement, as opposed to whether the entire dispute may be arbitrated. "[T]he question 'who has the primary power to decide arbitrability' turns upon what the parties agreed about *that* matter." *First Options*, 514 U.S. at 943 (emphasis in original). The parties to this litigation did not agree to arbitrate arbitrability; Plaintiffs only agreed to arbitrate arbitrability—or any other dispute—with the Dealerships because the arbitration clause is limited to claims between "you and us"—i.e. Plaintiffs and the Dealerships. In the absence of a disagreement between Plaintiffs and the Dealerships, the agreement to arbitrate arbitrability does not apply. Therefore, a disagreement between Plaintiffs and Toyota "is simply not within the scope of the arbitration agreement." *Mundi*, 555 F.3d at 1045.

## II.

### A.

Toyota also argues that it may compel arbitration even though it is a nonsignatory to the Purchase Agreements because Plaintiffs are equitably estopped from avoiding arbitration.

"Equitable estoppel precludes a party from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes." *Comer v. Micor,*

*Inc.*, 436 F.3d 1098, 1101 (9th Cir. 2006) (internal quotation marks and citation omitted). In the arbitration context, this principle has generated various lines of cases. *See Mundi*, 555 F.3d at 1046. This case involves "a nonsignatory seeking to compel a signatory to arbitrate its claims against the nonsignatory." *Id.*

The United States Supreme Court has held that a litigant who is not a party to an arbitration agreement may invoke arbitration under the FAA if the relevant state contract law allows the litigant to enforce the agreement. *See Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 632 (2009). We therefore look to California contract law to determine whether Toyota, as a nonsignatory, can compel arbitration.[4]

Where a nonsignatory seeks to enforce an arbitration clause, the doctrine of equitable estoppel applies in two circumstances: (1) when a signatory must rely on the terms of the written agreement in asserting its claims against the nonsignatory or the claims are "intimately founded in and intertwined with" the underlying contract, *Goldman v. KPMG LLP*, 173 Cal. App. 4th 209, 221 (2009) (quoting *Metalclad Corp. v. Ventana Envtl. Org. P'ship*, 109 Cal. App. 4th 1705, 1713 (2003)), and (2) when the signatory alleges substantially interdependent and concerted misconduct by the nonsignatory and another signatory and "the allegations of interdependent misconduct [are] founded in or intimately connected with the obligations of the underlying agreement." *Goldman*, 173 Cal. App. 4th at 219. Toyota argues that this case presents both circumstances.

---

[4] No party has asked us to apply any state law other than California.

**1.**

In *Jones v. Jacobson*, the California Court of Appeal addressed the first possibility. 195 Cal. App. 4th 1, 20 (2011). When a signatory relies on the terms of a written agreement,

> [u]nder [the doctrine of equitable estoppel], a nonsignatory defendant may invoke an arbitration clause to compel a signatory plaintiff to arbitrate its claims when the causes of action against the nonsignatory are *intimately founded in and intertwined with the underlying contract* obligations. [. . .] This requirement comports with, and indeed derives from, the very purposes of the doctrine: to prevent a party from using the terms or obligations of an agreement as the basis for his claims against a nonsignatory, while at the same time refusing to arbitrate with the nonsignatory under another clause of the same agreement.

195 Cal. App. 4th 1, 20 (2011) (internal quotations omitted) (emphasis added) (citing *Boucher v. Alliance Title Co.*, 127 Cal. App. 4th 262, 271–72 (2005); *JSM Tuscany, LLC v. Superior Court*, 193 Cal. App. 4th 1222, 1237 (2011); *Goldman*, 173 Cal. App. 4th at 221). "[E]quitable estoppel applies only if the plaintiffs' claims against the nonsignatory are dependent upon, or inextricably bound up with, the obligations imposed by the contract plaintiff has signed with the signatory defendant." *Goldman*, 173 Cal. App. 4th at 229–30. "[M]erely 'mak[ing] reference to' an agreement with an arbitration clause is not enough. Equitable estoppel

applies 'when the signatory to a written agreement containing an arbitration clause "must rely on the terms of the written agreement in asserting [its] claims" against the nonsignatory.'" *Id.* at 218 (quoting *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999)). To determine whether the plaintiffs' claims relied on the written agreement, the *Goldman* court looked to whether the claims that the nonsignatory sought to arbitrate were "'intimately founded in and intertwined with the underlying contract obligations.'" *Id.* at 221 (quoting *Metalclad*, 109 Cal. App. 4th at 1713).

In *Goldman*, investors brought consolidated claims against their accountants, attorneys, and investment advisors for, among other things, breach of fiduciary duty and fraud related to a fraudulent tax avoidance scheme. *Id.* at 213. As one step in the scheme, the advisors assisted the investors in forming limited liability companies with standard operating agreements containing broad arbitration provisions. *Id.* The accountants and attorneys, who were not parties to the operating agreements, sought to compel arbitration, relying on the doctrine of equitable estoppel. *Id.* at 216. The court affirmed a lower court's denial of the motion to compel arbitration, finding that the claims were "unrelated to any of the obligations in the operating agreements, which were merely a procedural and collateral step in the creation of the fraudulent tax shelters." *Id.* at 218. The court observed that the complaints did not "rely on or use any terms or obligations of the operating agreements as a foundation for their claims" and did not even mention the agreements. *Id.* Thus, the court held the doctrine of equitable estoppel was inapplicable. *Id.*

Similarly, in *Mundi*, the widow of an insured borrower brought a claim against an insurer for refusing to pay a

benefit under a life insurance policy to a third-party lender after the borrower's death.[5]  555 F.3d at 1044.  Although the insurance policy did not contain an arbitration provision, the insurer sought to compel arbitration on the basis of equitable estoppel because a loan agreement between the borrower and the third-party lender—designated as the creditor-beneficiary of the policy—contained an arbitration clause.  *Id.*  The court held that the breach of insurance policy claim was not "intertwined" with the loan agreement and the claim did not "arise out of" or "relate directly to" the loan agreement.  *Id.* at 1047 (internal quotations and alterations omitted).

Toyota broadly asserts that Plaintiffs' claims are intertwined with the Purchase Agreements because they rely upon the existence of Plaintiffs' vehicle purchase transactions.  In addition, Toyota argues that Plaintiffs' claims are intertwined in two specific ways: (1) Plaintiffs'

---

[5] We note some confusion as to whether *Mundi*, 555 F.3d 1042, remains good law.  *See, e.g.*, *In re Apple iPhone Antitrust Litig.*, 874 F. Supp. 2d 889, 895–98 (N.D. Cal. 2012).  In *Arthur Anderson*, 556 U.S. 624, the United States Supreme Court clarified that a litigant who is not party to an arbitration agreement may invoke arbitration if the relevant state contract law allows the litigant to enforce the agreement.  *Id.* at 632.  After careful review, we conclude that *Mundi* remains good law.  Although the court in *Mundi* cited federal equitable estoppel cases, rather than looking directly to applicable state law, the court applied the same substantive law on equitable estoppel that a California court would have applied.  Like the California courts in *Jones* and *Goldman*, the *Mundi* court held that in order for a nonsignatory to compel a signatory to arbitrate, the signatory's claims must be "intertwined with," "arise out of," or "relate directly to" the contract providing for arbitration.  555 F.3d at 1047.  As one court noted, "the mere fact that the court in *Mundi* referred to other federal court opinions in formulating its holding regarding equitable estoppel does not mean that *Mundi* was stating 'federal common law.'"  *In re Apple*, 874 F. Supp. 2d at 897.

prayer for relief seeks "revocation of acceptance," and (2) Plaintiffs rely on the "price term" of the Purchase Agreements in support of their prayer for damages for diminution of the purchase price. We take each of these arguments in turn.

*a. Vehicle Purchases*

Toyota's overarching argument is that Plaintiffs' claims are intertwined with the Purchase Agreements because Plaintiffs' claims rely on the existence of Plaintiffs' vehicle purchase transactions.

In Count I, Plaintiffs allege that Toyota violated California consumer protection law. Plaintiffs allege the violation arose from Toyota's unfair or deceptive practices, including failure to disclose and actively concealing the risk of the loss of brake control. Plaintiffs also allege material representations involving the characteristics, uses, benefits, and qualities of Toyota vehicles. For purposes of this claim, we discern no reliance by Plaintiffs on the Purchase Agreements. Toyota's arguments regarding Plaintiffs' requested relief aside, Toyota does not specifically argue this claim is intertwined with the Purchase Agreements.

In Count II, Plaintiffs allege Toyota violated California unfair competition law by repeated fraudulent misrepresentations and omissions regarding the safety of Plaintiffs' vehicles. This claim is not "intimately founded in" the Purchase Agreements, *Jones*, 195 Cal. App. 4th at 20, nor does it reference or rely upon the existence of the Purchase Agreements, *Goldman*, 173 Cal. App. 4th at 221.

In Count III, Plaintiffs allege violation of California false advertising law. For example, Plaintiffs allege Toyota disseminated false or misleading statements about vehicle safety through Toyota's advertising, marketing, and other publications. Similarly, Count III is not intimately founded in, nor does it reference or rely upon, the Purchase Agreements.

In Count IV, Plaintiffs allege breach of the implied warranty of merchantability because the brake defect rendered the vehicles unfit for their ordinary purposes. Toyota contends that the implied warranty arose by operation of the Purchase Agreements and is therefore intertwined with the Purchase Agreements. We disagree. The Purchase Agreements expressly differentiate dealer warranties from manufacturer warranties. For example, the Scholten Purchase Agreement states, "[t]his provision does not affect any warranties covering the vehicle that the manufacturer or supplier may provide." The Li Purchase Agreement further reads, "[t]he Dealer is not a party to the manufacturer's warranty, in the case of a new motor vehicle or chassis, the printed new manufacturer's new vehicle warranty delivered to Purchaser with such vehicle or chassis shall apply." Thus, Plaintiffs' implied warranty claim against Toyota arises independently from the Purchase Agreements, rather than intimately relying on them.

Finally, in Count V, Plaintiffs plead breach of contract in the alternative, "to the extent Toyota's repair or adjustment commitment is deemed not to be a warranty under California's Commercial Code." Plaintiffs allege the breach arises from Toyota's failure to adequately repair Plaintiffs' vehicles. Toyota argues Plaintiffs' claim relies upon the Purchase Agreement, including privity of contract between

Plaintiffs and Toyota. However, Plaintiffs' breach of contract claim does not rely on the Purchase Agreement. Although the claim "sounds in contract," as Toyota emphasizes, the claim relies on Plaintiffs' status as third-party beneficiaries to contracts between Toyota and the Dealerships—i.e. service duties the Dealerships owe to Plaintiffs on behalf of Toyota—not the Purchase Agreements. We agree with the district court's conclusion that, in portraying Plaintiffs' breach of contract claim as a breach of the Purchase Agreement, Toyota misrepresents Plaintiffs' breach of contract claim. Plaintiffs plead breach of contract in the alternative to the implied warranty claim, and the claim arises from the same actions underlying the warranty claim—Toyota's representations about its commitment to repairs and safety—not any promise in the Purchase Agreements. We thus find that Count V is not intertwined with the Purchase Agreements.

### b. Revocation of Acceptance

Toyota also contends that Plaintiffs' claims are intertwined because Plaintiffs seek "revocation of acceptance" as one form of relief. Toyota reads this relief as "revocation of acceptance of the Purchase Agreement," as opposed to revocation of acceptance of the sale itself.

Looking to California contract law, the correct analysis is whether Plaintiffs would have a *claim* independent of the existence of the Purchase Agreement (equitable estoppel applies "when the signatory must rely on the terms of the written agreement *in asserting its claims* against the nonsignatory," *Goldman*, 173 Cal. App. 4th at 222 (emphasis added), or "when the *causes of action* against the nonsignatory are intimately founded in and intertwined with

the underlying contract obligations," *Jones*, 195 Cal. App. 4th at 20 (emphasis added)), not whether the court must look to the Purchase Agreement to ascertain the requested relief. The emphasis of the case law is unmistakably on the claim itself, not the relief. Despite Toyota's focus on Plaintiffs' relief, Toyota offers no cases to support Toyota's proposed application.

Here, Plaintiffs' claims are premised on California consumer law, unfair competition, false advertising, breach of the implied warranty of merchantability, and breach of contract. In order for Toyota's equitable estoppel argument to succeed, Plaintiffs' claims themselves must intimately rely on the existence of the Purchase Agreements, not merely reference them. Toyota is correct that Plaintiffs' claims presume a transaction involving a purchase of a Class Vehicle. The claims do not, however, rely upon the existence of a Purchase Agreement. For illustration, a consumer who purchased a vehicle with cash instead of credit would still state a claim for which relief could be granted, absent a Purchase Agreement. In this regard, the facts resemble the facts of *Goldman* and *Mundi*, in which Plaintiffs' claims arose independently of the terms of the agreements containing arbitration provisions. Moreover, we note that Plaintiffs' First Amended Complaint never actually references the Purchase Agreement, either in the prayer for relief or otherwise.

*c. Price Term*

Toyota similarly argues that Plaintiffs rely on the "price term" of the Purchase Agreements because Plaintiffs request damages for diminution of value of their vehicles ("restitution" or "restitutionary disgorgement"). Again, we

disagree.  Under California law, mere reference to a term of the Purchase Agreements is not enough.  *See Goldman*, 173 Cal. App. 4th at 218.  Moreover, we note that Plaintiffs' Complaint does not reference the Purchase Agreements or a specific price term.  For purposes of their prayer for relief, Plaintiffs merely rely on the fact that they exchanged value for their vehicles, and that, due to the alleged ABS defect, the value of their vehicles has decreased.

We therefore find, as did the district court, that Toyota erroneously equates Plaintiffs' purchase of the Class Vehicles and the existence of Purchase Agreements between Plaintiffs and the Dealerships with interrelatedness between Plaintiffs' claims and the obligations of the Purchase Agreements. Plaintiffs do not seek to enforce or challenge the terms, duties, or obligations of the Purchase Agreements.  In fact, according to Plaintiffs' First Amended Complaint, the only operative documents are Toyota's marketing materials and express written warranties, which provide the basis of the false advertising claim.

**2.**

Toyota next argues that Plaintiffs must arbitrate their claims because Plaintiffs allege collusion and interdependent misconduct between Toyota and the Dealerships.  The doctrine of equitable estoppel applies where a signatory raises allegations of substantially interdependent and concerted misconduct by both a nonsignatory and a signatory. *Goldman*, 173 Cal. App. 4th at 222 & n.7 (citing *MS Dealer*,

177 F.3d at 947).[6]  California state contract law does not allow a nonsignatory to enforce an arbitration agreement based upon a mere allegation of collusion or interdependent misconduct between a signatory and nonsignatory.

> In *any* case applying equitable estoppel to compel arbitration despite the lack of an agreement to arbitrate, a nonsignatory may compel arbitration only when the claims against the nonsignatory are founded in and inextricably bound up with *the obligations imposed by the agreement containing the arbitration clause*.  In other words, allegations of substantially interdependent and concerted misconduct by signatories and nonsignatories, standing alone, are not enough: the allegations of interdependent misconduct must be founded in or intimately connected with the obligations of the underlying agreement.

*Goldman*, 173 Cal. App. 4th at 219 (emphasis in original).[7]

Toyota argues, "[P]laintiffs claim that Toyota and the signatory dealers 'engaged in a pattern of denial and concealment' of the alleged defect that caused [P]laintiffs'

---

[6] We note that although *MS Dealer*, 177 F.3d 942, is a federal case and *Arthur Andersen* instructs this court to apply California state law, the California Court of Appeal in *Goldman*, 173 Cal. App. 4th 209, adopted the *MS Dealer* equitable estoppel analysis as California state law.

[7] It is noteworthy that many California equitable estoppel cases omit any mention of the concerted misconduct line of equitable estoppel cases, suggesting the doctrine's principal application is where plaintiffs' claims are intertwined with agreements containing arbitration provisions.

injuries." Plaintiffs deny that they allege collusion between Toyota and the Dealerships.

We find unconvincing Toyota's claim that a pattern of denial or concealment by both Toyota and the dealers amounts to allegations of collusion or interdependent misconduct for purposes of equitable estoppel. As the district court noted, the sparse portions of the First Amended Complaint that Toyota cites to support its argument do not amount to collusion. Moreover, even if Toyota were correct that Plaintiffs allege a pattern of concealment between Toyota and the dealerships, these allegations are not connected to the Purchase Agreements. Rather, like the other allegations in the First Amended Complaint, the allegations of collusion are not "inextricably bound up with the obligations imposed by the agreement containing the arbitration clause." *Goldman*, 173 Cal. App. 4th at 219. Therefore, Plaintiffs' allegations alone cannot trigger equitable estoppel under California contract law. *See id.*

**B.**

Regarding equity, we briefly note that this case is distinguishable from other cases in which equitable estoppel has been applied. California courts have explicitly noted that parties should only be estopped if their "'own conduct renders assertion of those rights contrary to equity.'" *Goldman*, 173 Cal. App. 4th at 221 (quoting *Metalclad*, 109 Cal. App. 4th at 1713). The "linchpin" for equitable estoppel is fairness. *Id.* at 220. The facts of *Metalclad*, 109 Cal. App. 4th 1705, provide a useful contrast to this case. Metalclad, a California company, entered into an oral agreement with Ventana to sell Metalclad's subsidiary, Econsa. *Id.* at 1709. Metalclad followed up on the agreement

by entering into a written agreement with Geologic, a Ventana subsidiary, for the sale of Econsa. *Id.* The written agreement included a broad arbitration clause. *Id.* at 1710. Metalclad later brought claims including breach of contract and fraud against Ventana and others. *Id.* When Metalclad sought to avoid arbitration, Ventana argued that Metalclad should be equitably estopped because Metalclad sought to both enforce the agreement and repudiate the arbitration provision. *Id.* at 1713. The court agreed, holding that the claims were "intimately founded in and intertwined with" the underlying contract, and it would be unfair to allow Metalclad to avoid provisions in the same agreement it sought to enforce. *See id.* at 1717. "Another maxim of jurisprudence is relevant here . . . 'He who takes the benefit must bear the burden.'" *Id.* at 1718–19.

By contrast, in this case, Plaintiffs do not seek to simultaneously invoke the duties and obligations of Toyota under the Purchase Agreement, as it has none, while seeking to avoid arbitration. Thus, the inequities that the doctrine of equitable estoppel is designed to address are not present.

## III.

Finally, Toyota argues that the district court erred in finding that Toyota waived any right it may have had to compel arbitration. Because we find that Toyota has no right to compel arbitration in the present case, we need not consider the issue of waiver.

## CONCLUSION

We conclude that Toyota may not compel Plaintiffs to arbitrate their claims. The district court had the authority to

decide whether Toyota, a nonsignatory to the Purchase Agreements, may compel arbitration.  Further, we discern no reason that the Plaintiffs should be equitably estopped from avoiding arbitration in this case.

**AFFIRMED.**