**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

MAY 15 2020

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

In re: PACIFIC FERTILITY CENTER LITIGATION,

_____

A. B.; et al.,

  Plaintiffs-Appellees,

SHERLENE WONG; LAWRENCE WONG,

  Objectors-Appellees,

  v.

CHART INDUSTRIES, INC.,

  Defendant-Appellant,

 and

PACIFIC FERTILITY CENTER; et al.,

  Defendants.

No.   19-15885

D.C. No. 3:18-cv-01586-JSC

MEMORANDUM*

In re: PACIFIC FERTILITY CENTER LITIGATION,

_____

A. B.; et al.,

No.   19-15886

D.C. No. 3:18-cv-01586-JSC

---

  \* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Plaintiffs-Appellees,

SHERLENE WONG; LAWRENCE WONG,

Objectors-Appellees,

v.

PACIFIC MSO, LLC,

Defendant-Appellant,

and

CHART INDUSTRIES, INC.; et al.,

Defendants.

In re: PACIFIC FERTILITY CENTER LITIGATION,

_____

A. B.; et al.,

Plaintiffs-Appellees,

SHERLENE WONG; LAWRENCE WONG,

Objectors-Appellees,

v.

PRELUDE FERTILITY, INC.,

Defendant-Appellant,

No.  19-15888

D.C. No. 3:18-cv-01586-JSC

and

CHART INDUSTRIES, INC.; et al.,

Defendants.

Appeal from the United States District Court
for the Northern District of California
Jacqueline Scott Corley, Magistrate Judge, Presiding

Submitted April 16, 2020[**]
San Francisco, California

Before: HAWKINS and PAEZ, Circuit Judges, and RESTANI,[***] Judge.

In this consolidated appeal, Appellants Chart Industries, Inc. ("Chart"), Pacific MSO, LLC ("MSO"), and Prelude Fertility, Inc. ("Prelude") seek review of the district court's order denying their motions to compel arbitration. We have jurisdiction over this interlocutory appeal under 9 U.S.C. § 16(a)(1)(C), and our review is de novo. *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1124, 1127 (9th Cir. 2013). We affirm as to Chart and reverse as to MSO and Prelude.

Appellants are non-signatories to the Informed Consent Agreements ("ICA") Plaintiffs signed with Pacific Fertility Center ("PFC"), which contained an arbitration provision and a separate arbitration agreement for any dispute related to

---

[**] The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

[***] The Honorable Jane A. Restani, Judge for the United States Court of International Trade, sitting by designation.

medical services Plaintiffs received.  As relevant here, Appellants contend they are entitled to arbitration through equitable estoppel and, as to Prelude and MSO, as third-party beneficiaries and assignees.  We start and end with equitable estoppel.

The Federal Arbitration Act ("FAA") governs the enforceability of arbitration agreements in contracts involving interstate commerce.  *Kramer*, 705 F.3d at 1126 (citing 9 U.S.C. § 1 *et seq.*).  The right to compel arbitration is generally limited to parties to the contract, but non-signatories "may invoke arbitration under the FAA if the relevant state contract law allows the litigant to enforce the agreement."  *Id.* at 1126, 1128 (citations omitted).  Under California law, applicable here, non-signatories may seek arbitration through equitable estoppel in two scenarios:

> (1) [W]hen a signatory must rely on the terms of the written agreement in asserting its claims against the nonsignatory or the claims are "intimately founded in and intertwined with" the underlying contract, and (2) when the signatory alleges substantially interdependent and concerted misconduct by the nonsignatory and another signatory and "the allegations of interdependent misconduct [are] founded in or intimately connected with the obligations of the underlying agreement."

*Id.* at 1128–29 (quoting *Goldman v. KPMG LLP*, 92 Cal. Rptr. 3d 534, 541, 543 (Cal. Ct. App. 2009)).

Applying equitable estoppel against a signatory requires looking to "the relationships of persons, wrongs and issues," with a particular focus on whether the claims the non-signatory seeks to arbitrate are "intimately founded in and intertwined with the underlying contract obligations."  *Goldman*, 92 Cal. Rptr. 3d at

4

543 (citing *Metalclad Corp. v. Ventana Envtl. Organizational P'ship*, 1 Cal. Rptr. 3d 328, 334 (Cal. Ct. App. 2003)). This involves examining the facts alleged in the complaint and whether they rely or depend on the terms, duties, or obligations in the contract containing the arbitration provision in asserting the claims. *See id.* at 550–51. Also considered is whether the allegations "are in any way founded in or bound up with the terms or obligations" in the contract. *Id.* at 550. If the claims "are fully viable without reference to the terms of [the contract]," equitable estoppel does not apply. *See id.* at 551.

Starting with Chart, the operative complaint brings claims for negligent failure to recall; unfair competition under California's Unfair Competition Law ("UCL") based on failure to adequately design, manufacture, warn, and recall; and strict products liability for failure to warn, manufacturing defect, and design defect under the consumer expectations and risk-utility tests. These claims are based on factual allegations that: (1) Chart manufactured the storage tank at PFC; (2) it recalled several tanks after the tank at PFC failed; (3) its recall notice stated it was investigating the possible cause of vacuum failure in the tank based on a binding agent used during the manufacturing process; and (4) it made claims on its website regarding the superior quality of its equipment. None of Plaintiffs' claims against Chart, therefore, rely on the terms of the ICA, nor are they intimately founded in or intertwined with the terms of the ICA. Plaintiffs also do not allege collusion between

5

Chart and the other defendants, or a pattern of concealment involving Chart. Accordingly, neither *Goldman* scenario applies, so Chart cannot invoke equitable estoppel to compel arbitration as to these claims.

As to Prelude and MSO, however, we determine the first *Goldman* scenario applies and equitable estoppel compels arbitration of Plaintiffs' claims against these defendants. As before, we base this on a close examination of Plaintiffs' claims against Prelude and MSO and the factual allegations underpinning those claims. The operative complaint brings six claims against Prelude and MSO: (1) negligence and/or gross negligence; (2) bailment; (3) premises liability; (4) UCL violations; (5) violations of the Consumers Legal Remedies Act; and (6) fraudulent concealment. Underlying each claim are allegations about PFC's conduct, not just Prelude and MSO's. And Plaintiffs' allegations concerning their expectations about the service PFC provided—then imputed onto Prelude and MSO—are exactly the terms and duties of the ICA. Even though Plaintiffs do not mention the ICA, the claims they raise against Prelude and MSO are founded in and inextricably intertwined with the terms and obligations of the ICA. Under the first *Goldman* scenario then, Prelude and MSO can invoke equitable estoppel to compel Plaintiffs to arbitrate these claims.

**AFFIRMED IN PART, REVERSED IN PART**. Each party to bear its own costs on appeal.

6

*A.B. v. Chart Industries, Inc.*, *et al.*, 19-15885, 19-15886, 19-15888

**PAEZ**, concurring in part and dissenting in part:

Although the majority, relying on *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1127 (9th Cir. 2013), reviews de novo, there appears to be some inconsistency in our caselaw regarding whether that standard applies to an application of equitable estoppel in the arbitration context. In *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1179 (9th Cir. 2014), we reviewed for abuse of discretion the district court's rejection of the defendant's equitable estoppel argument to compel arbitration. I see no need to reconcile this inconsistency because under either standard, I would affirm the district court's ruling as to all Appellants.[1] Accordingly, I concur in the majority's disposition as to Chart, but dissent as to Prelude and MSO.

As the name suggests, equitable estoppel is fundamentally about fairness. *Goldman v. KPMG LLP*, 92 Cal. Rptr. 3d 534, 543 (Cal. Ct. App. 2009). In the arbitration context, courts apply the doctrine to prevent the unfairness that arises when a signatory to an agreement seeks to "have it both ways" by holding a non-signatory liable for the terms of the agreement while simultaneously avoiding that agreement's arbitration requirement. *See Kramer*, 705 F.3d at 1129 (citing *Jones*

---

[1] *See Waymo LLC v. Uber Techs., Inc.*, 870 F.3d 1342, 1345 (Fed. Cir. 2017) (noting the inconsistency in Ninth Circuit caselaw on the standard of review of equitable estoppel ruling in the arbitration context and affirming under either standard).

1

*v. Jacobson*, 125 Cal. Rptr. 3d 522, 538 (Cal. Ct. App. 2011)). And because equitable estoppel forces a signatory to arbitrate with a nonsignatory party, the signatory may be estopped from asserting rights in the agreement only where her "own conduct renders assertion of those rights contrary to equity." *Id.* at 1133 (quoting *Goldman*, 92 Cal. Rptr. 3d at 542 (quoting *Metalclad Corp. v. Ventana Envtl. Organizational P'ship*, 1 Cal. Rptr. 3d 328, 334 (Cal. Ct. App. 2003))). The "sine qua non" for equitable estoppel to apply is that the plaintiff's claims "must be dependent upon, or founded in and inextricably intertwined with," the agreement she signed. *Goldman*, 92 Cal. Rptr. 3d at 540; *id.* at 550 (estoppel is triggered by "*[t]he plaintiff's actual dependence on the underlying contract in making out the claim against the nonsignatory defendant*" (citation omitted) (alteration in original)). The doctrine applies only in "narrow situations." *Waymo*, 870 F.3d at 1345 (applying California substantive law).

In my view, the district court correctly concluded that Plaintiffs should not be estopped from avoiding arbitration with Prelude and MSO. Initially, as the majority points out, in bringing their claims against Prelude and MSO, Plaintiffs do not expressly mention their agreement with PFC. Although not dispositive, that fact alone supports the district court's conclusion here, *see Jones*, 125 Cal. Rptr. 3d at 527 & n.3, and also distinguishes this case from the only case cited by the majority in which the court held that equitable estoppel applies, *see Metalclad*, 1

Cal. Rptr. 3d at 337. Indeed, it is difficult to see how Plaintiffs' claims can be "intimately founded in and intertwined with" the obligations of an agreement that Plaintiffs' complaint completely fails to mention.

In any event, a careful review of the complaint reveals that Plaintiffs' claims against Prelude and MSO do not actually depend on Plaintiffs' agreements with PFC. Plaintiffs bring several claims based on Prelude and MSO's failure to exercise appropriate care in the handling of Plaintiffs' eggs and embryos, culminating in the tank failure. Plaintiffs allege that Prelude and MSO owed them such a duty not because of *Plaintiffs'* agreements with PFC, but rather because of *Prelude and MSO's* separate agreements with PFC. Plaintiffs' negligence claim, for example, is based on Prelude and MSO's "special relationship with Plaintiffs arising from the sensitive services Defendants undertook to perform." Framed in this way, Plaintiffs here are similar to the plaintiffs in *Kramer*—third-party beneficiaries of the contracts signed among the defendants. 705 F.3d at 1131. And although Prelude and MSO's exercise of reasonable care may encompass many of the same duties that PFC expressly agreed to undertake, Plaintiffs' claims are in no way "dependent upon, or founded in and inextricably intertwined with" those agreements.

The district court's recent order partially granting and partially denying Prelude and MSO's motions to dismiss the complaint only confirms that Plaintiffs'

3

claims do not rely on their written agreements with PFC. *See In re Pac. Fertility Ctr. Litig.*, No. 18-CV-01586-JSC, 2019 WL 3753456 (N.D. Cal. Aug. 8, 2019). Indeed, many of Plaintiffs' claims failed precisely for that reason. For example, the district court dismissed Plaintiffs' claims premised on Prelude and MSO's failure to disclose their role in the tissue storage because, without any contract between them, Plaintiffs had not adequately alleged Prelude or MSO owed them such a duty. *Id.* at *6–*8. Similarly, the district court dismissed Plaintiffs' bailment claim, a contractual theory, where Plaintiffs specifically disavowed any reliance on an express or implied contract with Prelude. *Id.* at *4–*5. Conversely, but nonetheless proving the point, the district court upheld Plaintiffs' claim for premises liability because "mere possession with its attendant right to control conditions on the premises is a sufficient basis for the imposition of an affirmative duty to act." *Id.* at *5–*6. In other words, Prelude and MSO owed a duty of care to Plaintiffs regardless of Plaintiffs' agreements with PFC.

The majority—and not the Plaintiffs—impute the terms of the written agreement onto parties who were not signatories to that agreement. The better course for us to follow would be to leave the parties "bound by the agreements they made and not by any they did not make." *Murphy v. DirecTV, Inc.*, 724 F.3d 1218 (9th Cir. 2013). Plaintiffs should not, in equity, be required to arbitrate

4

against any of the appellants.  Accordingly, I respectfully concur in part and dissent in part.