Filed 3/10/22  Foley v. Airtouch Cellular CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| JAMES P. FOLEY et al., | B312404 |
| Plaintiffs and Respondents, | (Los Angeles County Super. Ct. No. 19STCV44376) |
| v. | |
| AIRTOUCH CELLULAR, INC., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Thomas D. Long, Judge.  Affirmed.

Wilson Elser Moskowitz Edelman & Dicker, B. Otis Felder, and Valeria Granata, for Defendant and Appellant.

David A. Cordier for Plaintiffs and Respondents.

# INTRODUCTION

James and Lou Ann Foley filed this action against Airtouch Cellular Inc. dba Verizon Wireless (Verizon) after their Samsung Galaxy cell phone exploded, injuring James and damaging property in the Foleys' home. Verizon filed a motion to compel arbitration based on a provision in a customer agreement signed by Lou Ann. The trial court granted the motion to compel Lou Ann to arbitrate her claims, but denied the motion to compel James, who did not sign the agreement, to arbitrate his. Verizon argues the trial court should have compelled James to arbitrate his claims because he was the account owner, Lou Ann acted as his agent when she purchased the phone from Verizon and signed an arbitration agreement, and James is equitably estopped from refusing to arbitrate. Because Verizon's arguments are forfeited and meritless, we affirm.

# FACTUAL AND PROCEDURAL BACKGROUND

A.    *Lou Ann Buys a Cell Phone, Which Later Explodes*

On June 15, 2014 Lou Ann bought a Samsung Galaxy cell phone and signed up for a wireless service plan at a Verizon store. Lou Ann signed, after the words "Customer's Signature," a two-page "Verizon Wireless Customer Agreement" (the June 2014 agreement). Under the words "Customer Information," the document listed James's name, home address, and home phone number. The June 2014 agreement stated: "I agree to the current Verizon Wireless Customer Agreement (CA), including the calling plan . . . and other terms and conditions for services and selected features I have agreed to purchase as reflected on

the receipt, and which have been presented to me by the sales rep, and which I had the opportunity to review.  I understand that I am agreeing to an early termination fee per line as reflected on this receipt, limitations of liability for service and equipment, settlement of disputes by arbitration and other means instead of jury trials and other important terms in the CA."

On January 18, 2018 the phone was resting on a nightstand when it "suddenly and without warning exploded and caught fire, injuring [James], who was reading in his bedroom." The explosion and fire also damaged the Foleys' bedding and carpeting.

B.    *The Foleys Sue Verizon, and Verizon Files a Motion To Compel Arbitration*

The Foleys filed this action for personal injury and property damage against Verizon, Samsung Electronics America, Inc., and Samsung Electronics, Co., Ltd.[1]  The Foleys alleged causes of action for strict liability, negligence, and breach of warranty.

Verizon moved to compel arbitration, relying on an arbitration provision in the June 2014 agreement and a 10-page document titled "My Verizon Wireless Customer Agreement" that had a footer stating, "Customer Agreement – November 21, 2013" (the November 2013 agreement).  Although the November 2013 agreement was unsigned and made no references to James or Lou Ann (or any customer for that matter), Verizon asserted the November 2013 agreement was "accepted by all Verizon customers upon activating their services" and was incorporated

_____

[1]    The Samsung entities are not parties to this appeal.

3

by reference in the June 2014 agreement signed by Lou Ann.  The November 2013 agreement contained an arbitration provision that stated:  "You and Verizon Wireless both agree to resolve disputes only by arbitration or in small claims court."  The only evidence submitted by Verizon was the declaration of LaDonna Pratt, a senior manager with executive relations and a "designated corporate representative" for Verizon, whose statements that the two agreements were "between Plaintiffs and Verizon" were without foundation and demonstrably false about both the November 2013 agreement (which Lou Ann did not sign) and the June 2014 agreement (which James did not sign).

Verizon argued that Lou Ann had to arbitrate her claims because she signed the June 2014 agreement, which contained the arbitration provision, and that, although James did not sign that agreement, he was listed as the "Verizon account holder." Verizon also argued James was a third party beneficiary of the June 2014 agreement and that the June 2014 agreement incorporated by reference the November 2013 agreement.  The Foleys argued there was no evidence that Verizon provided a copy of the November 2013 agreement to Lou Ann (or James) or that James ever saw the arbitration provision in that document. They also argued James could not be a third party beneficiary because the November 2013 agreement contained a provision stating, "'This agreement isn't for the benefit of any third party except for [Verizon's] parent companies, affiliates, subsidiaries, agents, and predecessors and successors in interest.'"[2]

_____

[2]    Although this issue is not relevant to this appeal (because Verizon no longer argues James was a third party beneficiary), the Foleys may have had the agreements confused.  The issue in the trial court was not whether the November 2013 agreement

4

The trial court granted Verizon's motion to compel arbitration of Lou Ann's claims, but denied the motion to compel arbitration of James's claims. The court ruled that, although "Verizon contends James is the account holder under the [June 2014] agreement, the agreement is signed only by Lou Ann, and Verizon provides no evidence of how the agreement was intended to benefit James as a third-party." The court also ruled that, although "nonsignatories may be bound . . . by an arbitration agreement in certain circumstances, Verizon fails to show any of these circumstances apply in this action." When counsel for Verizon expressed concern at the hearing that the court had a "doubt as to what relation exists between James . . . and Verizon," the court stated, "I don't have a doubt. There is no relationship," and "The court's not in doubt about the relationship. The court believes there isn't one." The court ordered James's action to proceed and stayed the arbitration of Lou Ann's action pending the outcome of the court action. Verizon timely appealed.

## DISCUSSION

Verizon argues the trial court erred in denying its motion to compel James to arbitrate his claims because (1) James, as the account owner, was bound by the arbitration provision in the November 2013 agreement; (2) Lou Ann acted as James's agent when she purchased the phone and signed the June 2014 agreement; and (3) James is equitably estopped from refusing to

precluded third party beneficiaries, but whether the June 2014 agreement did.

5

arbitrate because his claims are based on the November 2013 and June 2014 agreements. Verizon, however, forfeited all three of these arguments by not making them in the trial court, where Verizon argued instead that James was a third party beneficiary of the June 2014 agreement. (See *Johnson v. Greenelsh* (2009) 47 Cal.4th 598, 603; *Curtis v. Superior Court* (2021) 62 Cal.App.5th 453, 474, fn. 15.) All three arguments also lack merit.

A.       *Applicable Law and Standard of Review*

Under Code of Civil Procedure section 1281.2,[3] "a trial court must grant a motion or petition to compel arbitration only 'if it determines that an agreement to arbitrate the controversy exists.'" (*Gamboa v. Northeast Community Clinic* (2021) 72 Cal.App.5th 158, 164, fn. omitted.) But "'parties can only be compelled to arbitrate when they have agreed to do so. [Citation.] "Arbitration . . . is a matter of consent, not coercion."'" (*Cohen v. TNP 2008 Participating Notes Program, LLC* (2019) 31 Cal.App.5th 840, 858-859 (*Cohen*); see *Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC* (2012) 55 Cal.4th 223, 236.) The "threshold questions presented by every motion or petition to compel arbitration are whether an agreement to arbitrate exists [citations] and, if so, whether the parties' dispute falls within the scope of that agreement." (*Ahern v. Asset Management Consultants, Inc.* (2022) 74 Cal.App.5th 675, 687.) "'The party seeking to compel arbitration bears the

---

³       Statutory references are to the Code of Civil Procedure.

6

burden of proving the existence of a valid arbitration agreement.'" (*Cohen*, at p. 859.)

"'"There are circumstances in which nonsignatories to an agreement containing an arbitration clause can be compelled to arbitrate under that agreement. As one authority has stated, there are six theories by which a nonsignatory may be bound to arbitrate: '(a) incorporation by reference; (b) assumption; (c) agency; (d) veil-piercing or alter ego; (e) estoppel; and (f) third-party beneficiary.'"'" (*Cohen, supra,* 31 Cal.App.5th at p. 859.) "'"Whether an arbitration agreement is binding on a third party (e.g., a nonsignatory) is a question of law subject to de novo review.'"'" (*Ibid.*; see *Benaroya v. Willis* (2018) 23 Cal.App.5th 462, 468.) "Nevertheless, we presume the court found every fact and drew every permissible inference necessary to support its judgment or order, and we defer to the court's determination of credibility of the witnesses and weight of the evidence in resolving disputed facts." (*Cohen*, at p. 859.)

B. *The Trial Court Did Not Err in Denying Verizon's Motion To Compel James To Arbitrate His Claims*

1. *James Did Not Agree to Arbitration in the November 2013 Agreement*

Verizon argues on appeal that James was bound by the arbitration provision in the November 2013 agreement because he was the "owner of the Verizon Account" on which Lou Ann purchased the Galaxy cell phone in June 2014 and because when he opened the account he "was presented with and agreed to the [November 2013] Customer Agreement," which contained an arbitration provision. In addition to forfeiting the argument by

7

not making it in the trial court, Verizon did not meet its burden of proving the existence of a valid arbitration agreement by a preponderance of the evidence. (See *Gamboa v. Northeast Community Clinic, supra*, 72 Cal.App.5th at pp. 164-165.) The November 2013 agreement on which Verizon relies does not contain James's (or Lou Ann's) name or account number, let alone either of their signatures. Verizon did not submit any evidence that James was presented with the document, that he agreed to it, or that he was connected to the document at all.[4]

2.      *Lou Ann Did Not Sign the June 2014 Agreement as James's Agent*

"An agent . . . may have implied authority to agree to arbitration on behalf of its principal." (*Matthau v. Superior Court* (2007) 151 Cal.App.4th 593, 599.) "'Every California case finding nonsignatories to be bound to arbitrate is based on facts that demonstrate, in one way or another, the signatory's implicit authority to act on behalf of the nonsignatory.'" (*Cohen, supra*, 31 Cal.App.5th at pp. 859-860.) "An agency is ostensible when the principal intentionally, or by want of ordinary care, causes a third person to believe another to be his agent who is not really employed by him." (Civ. Code, § 2300; see *UFCW & Employers Benefit Trust v. Sutter Health* (2015) 241 Cal.App.4th 909, 931-932 (*UFCW*).) "'Ostensible authority must be based on the

_____

[4]      The November 2013 agreement states "you" can accept the agreement by, among other things, "[a]ctivating your [s]ervice." Verizon submitted no evidence that James activated any service or that, as discussed, "you" referred to James.

8

acts or declarations of the principal and not solely upon the agent's conduct.'" (*Id.* at p. 932.)

Verizon argues on appeal that, when Lou Ann signed the June 2014 agreement that identified James as the customer, she did so as James's ostensible agent because Lou Ann and James are married. In addition to forfeiting this argument again by not making it in the trial court, and even assuming Lou Ann and James were married (although there is no evidence they were), Verizon submitted no evidence Lou Ann signed the June 2014 agreement as James's agent. "[A]gency cannot be implied from the marriage relationship alone." (*Valentine v. Plum Healthcare Group, LLC* (2019) 37 Cal.App.5th 1076, 1089; see *Goldman v. Sunbridge Healthcare, LLC* (2013) 220 Cal.App.4th 1160, 1172 ["the *status* of marriage cannot substitute for the *act* of conferring agency to a spouse"]; *Flores v. Evergreen at San Diego, LLC* (2007) 148 Cal.App.4th 581, 589 [a "marital relationship cannot alone create an agency" (fn. omitted)].)[5]

*Crowley Maritime Corp. v. Boston Old Colony Ins. Co.* (2008) 158 Cal.App.4th 1061, cited by Verizon, is not to the contrary. In that case the court stated "a nonsignatory can be

---

[5] Under section 1295, which applies to contracts for medical services, a nonsignatory spouse may be compelled to arbitrate causes of action for loss of consortium or wrongful death where the patient agreed to arbitrate medical malpractice disputes. (See, e.g, *Ruiz v. Podolsky* (2010) 50 Cal.4th 838, 853; *Gross v. Recabaren* (1988) 206 Cal.App.3d 771, 781.) There are no such causes of action here. As the trial court recognized at the hearing, when counsel for Verizon raised this issue: "Here, we're not dealing with medical malpractice. We're just dealing with a cell phone agreement. And that does not cut in your favor."

9

compelled to arbitrate under two sets of circumstances: (1) where the nonsignatory is a third party beneficiary of the contract containing the arbitration agreement;[6] and (2) where 'a preexisting relationship existed between the nonsignatory and one of the parties to the arbitration agreement, making it equitable to compel the nonsignatory to also be bound to arbitrate his or her claim.'" (*Id.* at pp. 1069-1070.) The court also stated: "The preexisting relationship generally gives the party to the agreement authority to bind the nonsignatory. Examples of the preexisting relationship include agency, spousal relationship, parent-child relationship and the relationship of a general partner to a limited partnership." (*Id.* at p. 1070.) The statement about spousal relationships in this part of the *Crowley* opinion, however, is contrary to the weight of authority and is dicta. *Crowley* did not concern spouses; it involved a group of insurers who sought to compel another group of (nonsignatory) insurers to arbitrate equitable contribution claims based on an arbitration agreement with the insured. (*Id.* at pp. 1065-1066.) Verizon cites no case where a signatory bound a nonsignatory spouse to arbitrate as an agent, without some evidence of agency beyond the fact of marriage.

Verizon essentially asks us to infer from the fact that James's name appears in the "customer information" field of the June 2014 agreement that Lou Ann had implicit authority to act on his behalf. But there was no evidence that James directed Lou Ann to purchase the phone on or using his account or that he

---

6      As discussed, although Verizon argued in the trial court James was a third party beneficiary of the June 2014 customer agreement, Verizon does not make that argument on appeal.

was involved in the June 2014 transaction in any way. And absent some act or statement by James, the purported principal, that led Verizon to believe Lou Ann was authorized to bind him to an agreement, Lou Ann had no ostensible authority to bind him to an agreement to arbitrate. (See *UFCW, supra*, 241 Cal.App.4th at p. 932.)

### 3. *James Was Not Equitably Estopped from Refusing To Arbitrate*

"A nonsignatory plaintiff may be estopped from refusing to arbitrate when he or she asserts claims that are 'dependent upon, or inextricably intertwined with' the underlying contractual obligations of the agreement containing the arbitration clause." (*Jensen v. U-Haul Co. of California* (2017) 18 Cal.App.5th 295, 306; see *JSM Tuscany, LLC v. Superior Court* (2011) 193 Cal.App.4th 1222, 1238.) "'In the arbitration context, a party who has *not* signed a contract containing an arbitration clause may nonetheless be compelled to arbitrate when he seeks enforcement of other provisions of the same contract that benefit him.'" (*UFCW, supra*, 241 Cal.App.4th at p. 928.) "'"[T]he linchpin for equitable estoppel is . . . fairness."'" (*Id.* at p. 929.)

Verizon argues James was equitably estopped from repudiating the arbitration provisions in the November 2013 and June 2014 agreements because his action against Verizon is based on those agreements. According to Verizon, "[i]t would be unfair for Mr. Foley to claim that the [November 2013 and June 2014 agreements] are not applicable to him only when seeking to enforce an arbitration agreement is at issue, yet allow him to sue Verizon on the basis that Verizon sold the subject phone for his use on the Verizon Account he owned."

11

In addition to again forfeiting this argument, Verizon overlooks that James's claims do not rely on or seek to enforce either agreement. The Foleys seek to recover for personal injury and property damage caused by an allegedly defective product sold by Verizon. They allege causes of action for strict liability, negligence, and breach of an implied warranty. James does not seek to enforce any provision of the June 2014 agreement, nor are his claims dependent on or inextricably intertwined with any provision of that agreement. Although the Foleys allege the Galaxy phone was purchased at a Verizon store, they do not mention any agreement. (See *Jensen v. U-Haul Co. of California, supra,* 18 Cal.App.5th at p. 306 ["'[E]ven if a plaintiff's claims "touch matters" relating to the arbitration agreement, "the claims are not arbitrable unless the plaintiff relies on the agreement to establish its cause of action."'"]; *Pillar Project AG v. Payward Ventures, Inc.* (2021) 64 Cal.App.5th 671, 678 [nonsignatory plaintiff's causes of action for negligence and false advertising did not rely on or refer to an agreement between the defendant and a third party and were not inextricably intertwined with that agreement]; *UFCW, supra,* 241 Cal.App.4th at p. 929 [nonsignatory health care employee benefits trust's statutory antitrust and unfair competition causes of action did not seek to enforce any portion of a provider contract]; *Kramer v. Toyota Motor Corp.* (9th Cir. 2013) 705 F.3d 1122, 1132 [plaintiffs' causes of action for violation of the California Consumers Legal Remedies Act, unfair competition, false advertising, breach of the implied warranty of merchantability, and breach of contract against an auto manufacturer did not rely on plaintiffs' purchase agreements with dealerships].)

## DISPOSITION

The order is affirmed.  Verizon's motion to augment the record is denied.  The Foleys are to recover their costs on appeal.


SEGAL, Acting P. J.


We concur:


FEUER, J.


WISE, J.*

---

\*      Judge of the Alameda County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

13