**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| ESTHER MARGARITA LIMA SUAREZ VIUDA DE YANG, Individually and as Personal Representative of the Estate of Chang Cheol Yang, Deceased; BRANDON CHEOL YANG LIMA, Minor; JI HEA YANG LIMA, Minor; CAMILA ROMINA YANG LIMA, Minor, <br><br> *Plaintiffs-Appellees*, <br><br> v. <br><br> MAJESTIC BLUE FISHERIES, LLC, a Delaware limited liability company, <br> *Defendant*, <br><br> and <br><br> DONGWON INDUSTRIES CO., LTD., a corporation incorporated under the laws of Korea, <br> *Defendant-Appellant.* | No. 15-16881 <br><br> D.C. No. 1:13-cv-00015 <br><br> OPINION |

Appeal from the United States District Court
for the District of Guam
Frances Tydingco-Gatewood, Chief District Judge,
Presiding

Argued and Submitted June 13, 2017
Honolulu, Hawaii

Filed November 30, 2017

Before:  Raymond C. Fisher, Richard A. Paez,
and Jacqueline H. Nguyen, Circuit Judges.

Opinion by Judge Nguyen

## SUMMARY[*]

### Arbitration

The panel affirmed the district court's order denying a motion to compel arbitration in a maritime action arising from the death of a seaman in the sinking of a fishing vessel.

A defendant sought arbitration based on an employment agreement between the seaman and the vessel's owner. Pursuant to a contract with the owner, the defendant supplied the vessel's crew and supervised its repairs and maintenance.

The panel held that the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, an act implementing a treaty of the same name, does not allow non-signatories or non-parties to compel arbitration.  Agreeing with other circuits, the panel held that, like an arbitration agreement, an arbitral clause in a contract must be "signed

---

[*] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

by the parties" in order to be enforceable under Article II(2) of the Convention Treaty.

The panel further held that the defendant could not compel arbitration under the Federal Arbitration Act, which expressly exempts from its scope any "contracts of employment of seamen." The panel declined to import into the court's Convention Act analysis precedent permitting a litigant who is not a party to an arbitration agreement to invoke arbitration under the FAA if the relevant state contract law allows the litigant to enforce the agreement.

## COUNSEL

Jerry D. Hamilton (argued) and Michael J. Dono, Hamilton Miller & Birthisel LLP, Miami, Florida, for Defendant-Appellant.

Scott A. Wagner (argued), Michael T. Moore, and Clay M. Naughton, Moore & Company P.A., Coral Gables, Florida, for Plaintiffs-Appellees.

## OPINION

NGUYEN, Circuit Judge:

Chang Cheol Yang was a seaman who died when the fishing vessel he worked on sank because of inadequate repairs and an incompetent crew provided by Dongwon Industries Co. Ltd ("Dongwon"). His widow commenced a wrongful death action against Dongwon on behalf of his three minor children, herself, and his estate. Dongwon moved to compel arbitration based on an employment

agreement between Mr. Yang and the vessel's owner, Majestic Blue Fisheries, LLC ("Majestic"). Because Dongwon is neither a signatory nor a party to the employment agreement, the district court denied Dongwon's motion. We affirm.

## I.

In 2008, Dongwon sold the vessel, the F/V Majestic Blue, for $10 to Majestic, which is owned by the same family that owns Dongwon. *In re Majestic Blue Fisheries, LLC*, No. CV 11-00032, 2014 WL 3728556, at *10–11 (D. Guam July 25, 2014). Around that time, Majestic and Dongwon entered into contracts that required Dongwon both to supply the vessel's crew and to supervise its repairs and maintenance. *Id.* at *11. By then, the vessel was the oldest in Dongwon's fleet. *Id.*

On May 21, 2010, after undergoing repairs and despite a known rudder leak, the vessel set sail from Guam with Mr. Yang on board. *Id*. at *22, 32. Three weeks later, on June 14, 2010, the vessel sank in fair weather after being flooded with water. *Id.* at *29, *42. The crew failed to properly respond to the flooding, leaving Captain David Hill to execute critical abandon ship procedures on his own. *Id*. at *30, *48. Shortly after Mr. Yang re-boarded to look for Captain Hill, the vessel sank and both men died. *Id*. at *26.

Following this tragedy, the widows of Mr. Yang and Captain Hill filed separate wrongful death actions with overlapping claims and legal theories. Both widows contend that the vessel's inadequate repairs and incompetent crew rendered it unseaworthy and caused it to sink. The complaints in both actions assert the same four claims against Dongwon and Majestic: (1) a survival action based on negligence for pre-death pain and suffering under the

Jones Act, 46 U.S.C. § 30304; (2) a wrongful death action under general maritime law; (3) a wrongful death action under the Death on the High Seas Act, 46 U.S.C. § 30301 *et seq.*; ("DOHSA"); and (4) a wrongful death action under the Jones Act.

Unencumbered by an arbitration clause, Captain Hill's widow successfully litigated her claims, obtaining a $3.2 million judgment that we affirmed on appeal. *Hill v. Majestic Blue Fisheries, LLC,* 692 F. App'x 871 (9th Cir. 2017). In that case, the district court found that the vessel sank because it was unseaworthy due to shoddy repairs (which resulted in the rudder leak) and an incompetent and untrained crew (who failed to close watertight doors or properly abandon ship). *Majestic Blue*, 2014 WL 3728556 at *30–31, *37, *49. But while Captain Hill's widow accessed a judicial forum for her claims against Majestic and Dongwon without litigating the arbitration issue, Yang's litigation has been stalled by a motion to compel arbitration filed by Dongwon (and joined by Majestic). Dongwon's motion relies on a March 23, 2010 employment agreement in which Majestic agreed to hire Mr. Yang as a Chief Engineer aboard the vessel. The agreement, which contains an arbitration clause, is signed by Mr. Yang and by Dongwon "on behalf of MAJESTIC BLUE FISHERIES, LLC."

The district court compelled arbitration of the claims against Majestic, but denied the motion as to Dongwon. Dongwon now appeals.

## II.

### A.  The Convention Act Does Not Allow Non-Signatories or Non-Parties to Compel Arbitration

Dongwon seeks to compel arbitration under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 9 U.S.C. § 201 *et seq.* ("Convention Act"), which implements a treaty of the same name[1] ("Convention Treaty") regarding arbitration agreements entered into by foreign entities or individuals.  *See Rogers v. Royal Caribbean Cruise Line*, 547 F.3d 1148, 1152–53 (9th Cir. 2008).  A party seeking to compel arbitration under the Convention Act must prove the existence and validity of "an agreement in writing within the meaning of the Convention" Treaty.  *Balen v. Holland Am. Line Inc.*, 583 F.3d 647, 654–55 (9th Cir. 2009) (citation omitted).  The Convention Treaty in turn defines an "agreement in writing" to "include an arbitral clause in a contract or an arbitration agreement, *signed by the parties* or contained in an exchange of letters or telegrams."  Convention Treaty, art. II(2) (emphasis added).  Recognizing that it is neither a signatory nor a party to Mr. Yang's employment agreement, Dongwon seeks to compel arbitration under the theory that the "signed by the parties" requirement in Article II(2) applies only to "an

---

[1] United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards, June 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. 3 *available at* http://www.uncitral.org/pdf/english/texts/arbitration/NY-conv/New-York-Convention-E.pdf.   While the Convention Treaty was executed in 1958, *id.*, the Convention Act was not enacted until 1970.  *Rogers*, 547 F.3d at 1152.

arbitration agreement" and not "an arbitral clause in a contract." We disagree.

We do not write on a blank slate. In *Kahn Lucas Lancaster, Inc. v. Lark International Ltd.*, the Second Circuit conducted the first reasoned analysis of Article II(2)'s text and legislative history to reverse an order compelling arbitration because, as here, the arbitration clause in the contract was not signed by one of the litigants. 186 F.3d 210, 215–18 (2d Cir. 1999) *abrogation on other grounds recognized by Sarhank Grp. v. Oracle Corp.*, 404 F.3d 657, 660 n.2 (2d Cir. 2005). Turning first to the text, the court concluded that the comma before the phrase "signed by the parties" signaled that it modified both "an arbitral clause in a contract" and "an arbitration agreement." *Id.* at 217. The court relied on two common canons of construction. First, it explained that, under the rule of punctuation, a modifying phrase that is set off from a series of antecedents by a comma applies to each of those antecedents. *Id.* at 216–17.**[2]** The court reasoned that interpreting the phrase "signed by the parties" to modify only an "arbitration agreement" rendered the comma superfluous, thereby violating the rule against surplusage. *Id.* at 217. Next, the court considered not only the final English text of the Convention Treaty but also the official French and Spanish texts, each of which used a plural form of the word "signed," consistent with the conclusion that the signature requirement applies not only to an "arbitration agreement" but also to an "arbitral clause in

---

**[2]** Under the last-antecedent rule, "the series 'A or B with respect to C' contains two items: (1) 'A' and (2) 'B with respect to C.' On the other hand, under the [punctuation canon] the series 'A or B, with respect to C' contains these two items: (1) 'A with respect to C' and (2) 'B with respect to C.'" *Stepnowski v. C.I.R.*, 456 F.3d 320, 324 n.7 (3d Cir. 2006) (citing *Kahn Lucas*, 186 F.3d at 216 n.1).

a contract." *Id.* at 216, 217. Finally, cognizant of the Supreme Court's instruction that an "analysis based only on punctuation is necessarily incomplete," the court analyzed Article II(2)'s legislative history, which confirmed the drafters' intent to apply the signing requirement to both phrases. *Id.* at 216, 218 (quoting *U.S. Nat'l Bank of Or. v. Indep. Ins. Agents of Am., Inc.*, 508 U.S. 439, 454 (1993)).

Consistent with *Kahn Lucas*, both we and our sister circuits have recognized the punctuation canon, under which "a qualifying phrase is supposed to apply to all antecedents instead of only to the immediately preceding one [where the phrase] is separated from the antecedents by a comma." *Davis v. Devanlay Retail Grp., Inc.*, 785 F.3d 359, 364 n.2 (9th Cir. 2015) (applying California law) (citation omitted). In *Davis*, for example, we applied this rule when reasoning that the phrase "[r]equest, or require as a condition to accepting the credit card as payment" indicates that the payment clause would modify only "require," not "request.'" *Id.* at 364–65; *see also Am. Int'l Grp., Inc. v. Bank of Am. Corp.*, 712 F.3d 775, 781–82 (2d Cir. 2013) ("When there is no comma, . . . the subsequent modifier is ordinarily understood to apply only to its last antecedent. When a comma is included, . . . the modifier is generally understood to apply to the entire series."); *Finisar Corp. v. DirecTV Grp., Inc.*, 523 F.3d 1323, 1336 (Fed. Cir. 2008) ("[W]hen a modifier is set off from a series of antecedents by a comma, the modifier should be read to apply to each of those antecedents.") (internal quotation marks omitted) (quoting *Kahn Lucas*, 186 F.3d at 215); *Stepnowski v. Comm'r*, 456 F.3d 320, 324 (3d Cir. 2006) ("[W]here there is a comma before a modifying phrase, that phrase modifies all of the items in a series and not just the immediately preceding item."); *Bingham, Ltd. v. United States*, 724 F.2d 921, 925–26 & n.3 (11th Cir. 1984) ("Where the modifier *is*

set off from two or more antecedents by a comma, . . . the comma indicates the drafter's intent that the modifier relate to more than the last antecedent.").**[3]**

The case relied upon by Dongwon—*Azure v. Morton*, 514 F.2d 897 (9th Cir. 1975)—is not to the contrary. There, we applied the last antecedent rule, not the punctuation rule. *See id.* at 900. Properly applying the punctuation rule here, the signature requirement applies not only to "an arbitration agreement" but also to "an arbitral clause in a contract."

We are persuaded by *Kahn Lucas*'s faithful adherence to the principles of treaty interpretation, which involve examining "the text of the treaty and the context in which the written words are used," as well as "the history of the treaty, the negotiations, and the practical construction adopted by the parties." *E. Airlines, Inc. v. Floyd*, 499 U.S. 530, 534–35 (1991) (internal quotation marks and citations omitted). Dongwon does not challenge *Kahn Lucas*'s detailed analysis of Article II(2)'s legislative history and negotiations. Instead, Dongwon urges us to consider a 2006 recommendation by a United Nations commission that only vaguely addresses Article II(2)'s application and dates more than three decades after the Convention Treaty's 1970 implementation.**[4]**   While Dongwon argues that the

---

**[3]** As with the last antecedent rule, the punctuation canon is not absolute. *See U.S. Nat'l Bank of Or. v. Indep. Ins. Agents of Am., Inc.,* 508 U.S. 439, 454-55 (1993).

**[4]** *See* United Nations Commission on International Trade Law, Recommendation Regarding the Interpretation of Article II, Paragraph 2, and Article VII, Paragraph 1, of the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, U.N. Doc. A/61/17 (July 7, 2006) (recommending that Article II(2) be "applied recognizing that the circumstances described therein are not exhaustive"), available at

recommendation's musings are "persuasive," it then relies on a case that does not support that proposition. In *In re Condor Insurance Ltd.*, the court examined a model law drafted by a United Nations commission that was later implemented almost verbatim via a federal statute expressly instructing courts to "consider its international origin" when interpreting it. 601 F.3d 319, 321–22 (5th Cir. 2010) (quoting 11 U.S.C. § 1508). Here, in contrast, the Convention Treaty was not drafted by the United Nations commission that issued the 2006 recommendation, and its recommendation has never been implemented by Congress. *See Kahn Lucas*, 547 F.3d at 216 (noting that the United Nations Conference on International Commercial Arbitration drafted the Convention Treaty). While we have occasionally interpreted an ambiguous treaty term in light of the signatory nations' post-ratification understanding, the 2006 recommendation is nothing like the kind of evidence we have found persuasive. *See, e.g., In re 840 140th Ave. NE, Bellevue, Wash.*, 634 F.3d 557, 568 (9th Cir. 2011) (examining decisions by signatory nations' courts).

Moreover, every circuit to consider *Kahn Lucas*'s cogent analysis has adhered to it. *See Standard Bent Glass Corp. v. Glassrobots Oy*, 333 F.3d 440, 449 (3d Cir. 2003) (following *Kahn Lucas* to hold that the Convention Treaty's "signed by the parties" requirement applied to "an arbitral clause within a contract or a separate arbitration agreement"); *Czarina, LLC v. W.F. Poe Syndicate*, 358 F.3d 1286, 1290–91 (11th

---

http://www.uncitral.org/pdf/english/texts/arbitration/NY-conv/A2E.pdf. Dongwon argues that this 2006 recommendation and Article II(2)'s use of the word "include" show that an agreement in writing "can be formed in multiple ways." But even if that were so, it does not negate the requirement that the agreement—regardless of how it was formed—be "signed by the parties." Convention Treaty, art. II(2).

Cir. 2004) (following *Kahn Lucas* to affirm the district court's refusal to enforce an arbitration award based on an unsigned arbitration clause). Dongwon nonetheless urges us to follow an outlier decision from the Fifth Circuit, issued before *Kahn Lucas*, which deemed the "signed by the parties" requirement to be inapplicable to an arbitration clause agreed to by the parties. *Sphere Drake Ins. PLC v. Marine Towing, Inc.*, 16 F.3d 666, 669–70 (5th Cir. 1994). That decision cited no authority and provided no analysis, *id.*, and has therefore been rejected by our sister circuits. *See Kahn Lucas*, 186 F.3d at 214, 218; *Standard Bent*, 333 F.3d at 449–50. Moreover, the Fifth Circuit has since expressly adopted the punctuation canon that *Sphere Drake* omitted and *Kahn Lucas* applied. *See Sobranes Recovery Pool I, LLC v. Todd & Hughes Const. Corp.*, 509 F.3d 216, 223 (5th Cir. 2007) ("[W]hen there is a serial list followed by modifying language that is set off from the last item in the list by a comma, this suggests that the modification applies to the whole list and not only the last item.").

Regardless, we need not rely solely on *Kahn Lucas* or its progeny to hold that Dongwon cannot compel arbitration. The Convention Treaty contemplates that only a "party" or "parties to the agreement referred to in article II" may litigate its enforcement. Convention Treaty, art. IV(1), V(1)(a), VI. Indeed, Article II makes clear that arbitration is permissible only where there is "an agreement in writing under which the parties undertake to submit to arbitration all or any differences which have arisen or which may arise between *them*"—not disputes between a party and a non-party. *Id.* at art. II(1) (emphasis added). Dongwon has therefore failed to satisfy not only the "signed by the parties" requirement discussed in *Kahn Lucas* but also the more basic requirement that a litigant be a "party" to the agreement under which it moves to compel. Because the Convention Treaty does not

allow non-signatories or non-parties to compel arbitration, Dongwon cannot do so here.

## B.  Dongwon Cannot Compel Arbitration on Other Grounds

Nor can Dongwon compel arbitration on grounds other than the Convention Treaty.  Federal arbitration law is codified in different chapters of Title 9 of the United States Code, and each chapter imposes unique requirements on a party seeking to compel arbitration.  *See Rogers*, 547 F.3d at 1152–53.  Dongwon moved to compel arbitration only under the second chapter—the Convention Act—but failed to satisfy its requirements.  Dongwon did not and cannot seek to compel arbitration under the first chapter—the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*—because the FAA expressly exempts from its scope any "contracts of employment of seamen."  9 U.S.C. § 1; *Rogers*, 547 F.3d at 1152–53.

The failure to satisfy either the requirements of the Convention Act or the FAA should end the inquiry.  But Dongwon urges us to circumvent the Convention Act's requirements by importing into our Convention Act analysis precedent permitting a "litigant who is not a party to an arbitration agreement to invoke arbitration *under the FAA* if the relevant state contract law allows the litigant to enforce the agreement."  *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1128 (9th Cir. 2013) (emphasis added).

We reject this doctrinal sleight of hand because the Convention Act and the FAA impose conflicting requirements on a litigant seeking to compel arbitration. While the FAA permits arbitration where an arbitration agreement is enforceable under state law, *id.*, the Convention Act requires a litigant to satisfy additional prerequisites

established by the Convention Treaty. *See Balen*, 583 F.3d at 654–55. One such prerequisite is that the litigant prove the agreement is in writing and "signed by the parties." Convention Treaty, art. II(2). Another is that the dispute at issue be one between the "parties." Convention Treaty, art. II(1). To the extent the FAA provides for arbitration of disputes with non-signatories or non-parties, it conflicts with the Convention Treaty and therefore does not apply. 9 U.S.C. § 208. Accordingly, cases interpreting the FAA as allowing a non-signatory or non-party to compel arbitration where an arbitration agreement is enforceable under state law offer no guidance in interpreting the Convention Act's requirement that an agreement in writing be signed by the parties.

Even if we ignore the Convention Act's requirements and instead look to our precedent interpreting the FAA, Dongwon would still not be entitled to relief. Under that precedent, we first determine, as a threshold matter, which state's contract law governs the agreement at issue. *See Kramer*, 705 F.3d at 1128. Under the relevant California law, none of Dongwon's three theories—equitable estoppel, agency, and alter ego—provide a basis to compel arbitration.[5]

"Equitable estoppel 'precludes a party from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes.'" *Comer v. Micor, Inc.,* 436 F.3d 1098, 1101 (9th Cir. 2006) (quoting *Wash.*

---

[5] Given the absence of Guam cases on point, we follow the Guam Supreme Court's instruction to look to California law as persuasive authority regarding equitable estoppel. *Mobil Oil Guam, Inc. v. Young Ha Lee*, 2004 Guam 9, ¶ 24 n.2 (Guam 2004); *Limtiaco v. Guam Fire Dep't,* 2007 Guam 10, ¶ 58 (Guam 2007).

*Mut. Fin. Grp., LLC v. Bailey*, 364 F.3d 260, 267 (5th Cir. 2004)). The doctrine does not apply where, as here, a plaintiff "would have a *claim* independent of the existence of the" agreement containing the arbitration provision. *Kramer*, 705 F.3d at 1131 (affirming denial of non-signatory's motion to compel arbitration). Dongwon's contrary argument "erroneously equates" the Complaint's allegation of an employment *relationship* between Mr. Yang and Dongwon with reliance upon the employment *agreement* between Mr. Yang and Majestic.[6] *Id.* at 1132. But Yang's DOHSA and general maritime law claims do not require proof of an employer agreement.[7] And, while the Jones Act claims require a finding that Dongwon was an employer, that finding does not require proof of a written employment agreement.[8] Because Yang's claims against Dongwon rely on its acts and omissions—furnishing an unseaworthy vessel and crew—and not on any obligations created by the employment agreement, Dongwon cannot compel arbitration under an equitable estoppel theory. *See Goldman v. KPMG LLP*, 92 Cal. Rptr. 3d 534, 550, 555 (Ct.

---

[6] The Complaint describes an "agent and alter ego" relationship between Dongwon and Majestic and alleges that both were employers for purposes of the Jones Act.

[7] *See Norfolk Shipbuilding & Drydock Corp. v. Garris*, 532 U.S. 811, 819–20 (2001) (recognizing a general "maritime cause of action" for wrongful death against an entity that had never "employed" decedent); *Davis v. Bender Shipbuilding & Repair Co.*, 27 F.3d 426, 428 (9th Cir. 1994) ("DOHSA claims may be pursued against defendants other than employers.").

[8] *See Glynn v. Roy Al Boat Mgmt. Corp.*, 57 F.3d 1495, 1498–99 (9th Cir. 1995) (explaining that employer status under the Jones Act claims may be established based on several factors, including whether the alleged employer hired and controlled the crew), *abrogated on other grounds by Atl. Sounding Co., Inc. v. Townsend*, 557 U.S. 404 (2009).

App. 2009) (affirming denial of non-signatory's motion to compel arbitration).

The authorities invoked by Dongwon do not suggest a different result. In *Metalcad*, the non-signatory defendant was able to compel arbitration under an equitable estoppel theory because the plaintiff's breach of contract and fraud claims alleged that defendant "caused" the signatory-defendant "to breach the underlying contract" with the plaintiff that contained the arbitration clause. *Metalclad Corp. v. Ventana Envtl. Organizational P'ship*, 1 Cal. Rptr. 3d 328, 337 (Ct. App. 2003). That is the quintessential example of a plaintiff "claiming the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes." *Kramer*, 705 F.3d at 1128. The other cases relied upon by Dongwon are also inapposite because they do not apply California law[9] and have been overruled or abrogated due to their failure to specify the applicable state law.[10]

Nor can Dongwon compel arbitration based on the Complaint's allegations of an agency or alter ego relationship between Dongwon and Majestic. Not only did

---

[9] *See, e.g., Ragone v. Atl. Video at Manhattan Ctr.,* 595 F.3d 115, 122, 128 (2d Cir. 2010) (citing New York and federal law); *Brown v. Pac. Life Ins.,* 462 F.3d 384, 389 (5th Cir. 2006) (citing Louisiana and federal law).

[10] *See, e.g., MS Dealer Serv. Corp. v. Franklin,* 177 F.3d 942, 948 (11th Cir. 1999) (failing to specify which law applied), abrogated by Arthur Andersen LLP v. Carlisle, 556 U.S. 624 (2009) as recognized in Lawson v. Life of the S. Ins. Co., 648 F.3d 1166, 1170–71 (11th Cir. 2011) (rejecting non-signatory's equitable estoppel argument as a basis to compel arbitration because MS Dealer's failure to make "clear that the applicable state law provides the rule of decision" meant that MS Dealer was either overruled or abrogated).

Dongwon waive arguments under these theories by failing to timely raise them in the district court, *see Hendricks & Lewis PLLC v. Clinton*, 766 F.3d 991, 998 (9th Cir. 2014), it affirmatively represented to the district court in related litigation that Dongwon and Majestic were "separate and distinct companies." Where, as here, an alter ego or agency relationship "was expressly disavowed," the non-signatory cannot compel arbitration under that theory. *Murphy v. DirecTV, Inc.*, 724 F.3d 1218, 1233 (9th Cir. 2013) (reversing order compelling arbitration). Moreover, Dongwon cannot invoke an alter ego theory to compel arbitration of the statutory claims at issue here because the alter ego rationale "applies only to" breach of contract claims. *Rowe v. Exline*, 63 Cal. Rptr. 3d 787, 794 (Ct. App. 2007) (rejecting non-signatory's argument to compel arbitration of statutory claims under alter ego theory).

Finally, we see no reason to depart from the general rule that the contractual right to compel arbitration "may not be invoked by one who is not a party to the agreement and does not otherwise possess the right to compel arbitration." *Britton v. Co-op Banking Grp.*, 4 F.3d 742, 744 (9th Cir. 1993). Dongwon argues that the state law exceptions to this general rule—equitable estoppel, agency, and alter ego— must be construed in Dongwon's favor given the federal policy in favor of arbitration. But the "public policy in favor of arbitration does not extend to those who are not parties to an arbitration agreement." *Comedy Club, Inc. v. Improv W. Assocs.*, 553 F.3d 1277, 1287 (9th Cir. 2009) (quoting *Buckner v. Tamarin*, 119 Cal. Rptr. 2d. 489, 490 (Ct. App. 2001). That is because the federal policy applies to "the scope of arbitrable issues" and "is inapposite when the question is whether a particular party is bound by the arbitration agreement." *Norcia v. Samsung Telecomm. Am., LLC*, 845 F.3d 1279, 1291 (9th Cir. 2017) (internal quotation

marks and citation omitted) (affirming denial of non-signatory's motion to compel arbitration); *accord Rajagopalan v. NoteWorld, LLC*, 718 F.3d 844, 847 (9th Cir. 2013) (same).

Accordingly, we affirm the district court's denial of Dongwon's motion to compel arbitration.

Costs shall be taxed against Dongwon.

**AFFIRMED.**