**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

BALKRISHNA SETTY, individually
and as general partner in Shrinivas
Sugandhalaya Partnership with
Nagraj Setty; SHRINIVAS
SUGANDHALAYA (BNG) LLP,
*Plaintiffs-Appellees*,

v.

SHRINIVAS SUGANDHALAYA LLP,
*Defendant-Appellant.*

No. 18-35573

D.C. No.
2:17-cv-01146-
RAJ

OPINION

On Remand from the United States Supreme Court

Filed January 20, 2021

Before: Dorothy W. Nelson, Johnnie B. Rawlinson, and
Carlos T. Bea, Circuit Judges.

Opinion by Judge D. W. Nelson;
Dissent by Judge Bea

# SUMMARY[*]

## Arbitration

On remand from the Supreme Court, the panel affirmed the district court's order denying defendant's motions to compel arbitration and to grant a stay pending arbitration in a civil case.

The panel previously held that defendant could not equitably estop plaintiffs from avoiding arbitration, and thus affirmed the district court's order. The Supreme Court granted certiorari, vacated the judgment, and remanded for further consideration in light of *GE Energy Power Conversion France SAS v. Outokumpu Stainless USA, LLC*, 140 S. Ct. 1637 (2020).

On remand, the panel applied federal common law, rather than the law of India, to the question whether defendant, a non-signatory to the partnership deed containing an arbitration provision, could compel plaintiffs to arbitrate. Reaffirming that *Letizia v. Prudential Bache Securities, Inc.*, 802 F.2d 1185 (9th Cir. 1986), remains good law, the panel concluded that federal law applied because the case involved federal claims and turned on the court's federal question jurisdiction.

The panel held that equitable estoppel precludes a party from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes. The panel concluded that plaintiffs' claims were

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

not clearly intertwined with the partnership deed providing for arbitration. Accordingly, the district court properly exercised its discretion in rejecting defendant's argument that plaintiffs should be equitably estopped from avoiding arbitration.

Dissenting, Judge Bea disagreed with the majority's holding that, not Indian, but U.S. federal common law governed the issue of equitable estoppel. He wrote that equitable estoppel claims pressed by nonsignatories under Chapter 1 of the Federal Arbitration Act are governed by state law, and this principle also applies to arbitration agreements governed by the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, or New York Convention. Judge Bea would hold that claims to compel arbitration under Chapter 1 of the FAA are governed by the domestic contract law of the relevant state or country, regardless of whether the arbitration agreement is primarily governed by FAA Chapter 1 or the New York Convention.

## COUNSEL

Brian W. Esler and Vanessa L. Wheeler, Miller Nash Graham & Dunn LLP, Seattle, Washington, for Defendant-Appellant.

Scott S. Brown, Maynard Cooper & Gale P.C., Birmingham, Alabama; Benjamin J. Hodges, Foster Pepper PLLC, Seattle, Washington; for Plaintiffs-Appellees.

**OPINION**

D.W. NELSON, Circuit Judge:

Shrinivas Sugandhalaya LLP ("SS Mumbai") appeals from the district court's order denying its motion to compel arbitration against Balkrishna Setty and Shrinivas Sugandhalaya (BNG) LLP (collectively, "SS Bangalore") and denying SS Mumbai's motion to grant a stay pending arbitration.

Relying on *Yang v. Majestic Blue Fisheries*, LLC, 876 F.3d 996 (9th Cir. 2017), we previously held that SS Mumbai could not equitably estop SS Bangalore from avoiding arbitration, and thus affirmed the district court's order. *Setty v. Shrinivas Sugandhalaya LLP*, 771 F. App'x 456 (9th Cir. 2019). The Supreme Court granted certiorari, vacated the judgment, and remanded for further consideration in light of *GE Energy Power Conversion France SAS v. Outokumpu Stainless USA, LLC*, 140 S. Ct. 1637 (2020). *See Shrinivas Sugandhalaya LLP v. Setty*, No. 19-623, 2020 WL 3038281, at *1 (U.S. June 8, 2020).

We have jurisdiction under 9 U.S.C. § 16. We review the denial of a motion to compel arbitration de novo and the district court's decision regarding equitable estoppel for abuse of discretion. *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175, 1179 (9th Cir. 2014). We review the denial of a motion to stay pending arbitration for abuse of discretion. *Alascom, Inc. v. ITT North Elect. Co.*, 727 F.2d 1419, 1422 (9th Cir. 1984). We affirm.

The parties dispute whether the law of India or federal common law applies to the question of whether SS Mumbai, a non-signatory to the Partnership Deed containing an arbitration provision, may compel SS Bangalore to arbitrate.

To argue that Indian law applies, SS Mumbai points to the Partnership Deed's arbitration provision. But whether SS Mumbai may enforce the Partnership Deed as a non-signatory is a "threshold issue" for which we do not look to the agreement itself. *See Casa del Caffe Vergnano S.P.A. v. ItalFlavors, LLC*, 816 F.3d 1208, 1211 (9th Cir. 2016). Moreover, the Partnership Deed's arbitration provision applies to disputes "arising between the partners" and not also to third party such as SS Mumbai. *See Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1045 (9th Cir. 2009). We decline to apply Indian law on the basis of the Partnership Deed.

Under *Letizia v. Prudential Bache Securities, Inc.*, we apply "federal substantive law," for which we look to "ordinary contract and agency principles," in determining the arbitrability of federal claims by or against nonsignatories to an arbitration agreement. 802 F.2d 1185, 1187 (9th Cir. 1986). The more recent decisions instead applying "relevant state contract law" all involved only state-law claims, and also relied on the court's diversity jurisdiction. *See In re Henson*, 869 F.3d 1052, 1059 (9th Cir. 2017) (citing *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1128 (9th Cir. 2013) (citing *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 632 (2009))); *see also GE Energy Power*, 140 S. Ct. at 1642 (plaintiffs' lawsuit brought state-law tort and warranty claims). *Letizia* thus remains good law. And because this case, like *Letizia*, involves federal claims and turns on the court's federal question jurisdiction, it controls.

"Equitable estoppel precludes a party from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes." *Mundi*, 555 F.3d at 1045 (citation and internal quotation marks omitted). In

the arbitration context, the doctrine has generated various lines of cases, including one involving "a nonsignatory seeking to compel a signatory to arbitrate its claims against the nonsignatory." *Id.* at 1046–47. For equitable estoppel to apply, it is "essential . . . that the subject matter of the dispute [is] intertwined with the contract providing for arbitration." *Rajagopalan v. NoteWorld, LLC*, 718 F.3d 844, 847 (9th Cir. 2013). "We have never previously allowed a non-signatory defendant to invoke equitable estoppel against a signatory plaintiff[.]" *Id.*

SS Bangalore's claims against SS Mumbai are not clearly "intertwined" with the Partnership Deed providing for arbitration. To be sure, the crux of several claims is that the Partnership, and not SS Mumbai, is the true owner of the disputed marks. But the Partnership does not own the marks because of any provision of the Partnership Deed, but rather because of the Partnership's "prior use" of the marks over several years. Moreover, any allegations of misconduct by Nagraj Setty (a signatory to the Partnership Deed) are not clearly intertwined with SS Bangalore's claims against SS Mumbai.

Thus, the district court did not abuse its discretion in rejecting SS Mumbai's argument that SS Bangalore should be equitably estopped from avoiding arbitration.

Because the district court did not err in denying SS Mumbai's motion to compel arbitration, it did not abuse its discretion in denying SS Mumbai's motion to stay the proceedings pending arbitration. *See Alascom*, 727 F.2d at 1422.

**AFFIRMED.**

BEA, Circuit Judge, dissenting:

On remand from the Supreme Court, we are faced with the question of which equitable estoppel law governs an Indian company's motion to compel another Indian company and its Indian owner to arbitration based on an agreement entered into in India, signed by two Indian brothers (who own the Indian companies), and governing conduct in India. The majority holds that, not Indian, but U.S. federal common law governs the issue.

I dissent. The Supreme Court and Ninth Circuit have time and again held that whichever background body of state contract law that governs the arbitration agreement also governs equitable estoppel claims to compel arbitration pursued under Chapter 1 of the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 *et seq*. We should not hold differently here.

# I

After their father's death, brothers Balkrishna and Nagraj Setty signed a Partnership Deed agreeing to joint ownership of Shrinivas Sugandhalaya, their late father's incense manufacturing company. The Partnership Deed was "made and entered into at Mumbai [India] on this 24th December 1999." The Partnership Deed contained an arbitration clause requiring that "[a]ll disputes of any type whatsoever in respect of the partnership arising between the partners either during the continuance of this partnership or after the determination thereof shall be decided by arbitration . . . ."

For a time, the Setty brothers jointly operated their father's company, but soon they decided to split up and operate their own incense manufacturing firms. Plaintiff-Appellee Balkrishna founded Shrinivas Sugandhalaya

(BNG) LLP ("SS Bangalore") operating out of Bangalore, while brother Nagraj founded Shrinivas Sugandhalaya LLP operating out of Mumbai ("SS Mumbai"). Neither SS Bangalore nor SS Mumbai were signatories to the Partnership Deed and its arbitration clause. Since then, the two brothers and their companies have competed against each other in the incense market, ultimately leading to the present dispute over trademark rights in the United States.

Plaintiff-Appellees Balkrishna and SS Bangalore brought suit against SS Mumbai and its U.S. distributor in federal court in Alabama. The complaint did not name Nagraj Setty, SS Mumbai's owner, as a defendant. Plaintiff-Appellees claimed federal jurisdiction based on federal question, trademark, and supplemental jurisdiction. *See* 28 U.S.C. §§ 1331, 1338, 1367; 15 U.S.C. §1121. They claim Defendant-Appellant SS Mumbai committed a number of U.S. federal trademark violations, including that SS Mumbai had fraudulently obtained trademark registrations by falsely claiming no other person had the right to use the Shrinivas Sugandhalaya trademarks. The complaint alleges that SS Mumbai "knew that Plaintiff Shrinivas Sugandhalaya (BNG) LLP was authorized by the Partnership to use the SHRINIVAS SUGANDHALAYA mark in the United States." Plaintiff-Appellees also brought two state law claims based on Alabama common law: tortious interference to its business and unfair competition.

The suit was transferred from the Northern District of Alabama to the Western District of Washington under 28 U.S.C. § 1404(a). SS Mumbai moved to dismiss or stay the case in favor of arbitration, arguing that Plaintiff-Appellees should be equitably estopped from avoiding the arbitration clause present in the Partnership Deed. The district court denied the motion, ruling against SS Mumbai's

claim of equitable estoppel. The district court did not address the question of which law of equitable estoppel should apply—the choice of law issue. Instead, the court analyzed the equitable estoppel claim under generalized estoppel doctrine drawn from Ninth Circuit cases.[1]

On appeal, we affirmed the district court. *See Setty v. Shrinivas Sugandhalaya LLP*, 771 F. App'x 456 (9th Cir. 2019) (unpublished), *cert. granted, judgment vacated*, 141 S. Ct. 83 (2020). However, rather than affirm on the merits of the equitable estoppel claim, we held instead that nonsignatory SS Mumbai was barred from compelling arbitration under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("New York Convention") as interpreted by *Yang v. Majestic Blue Fisheries, LLC*, 876 F.3d 996 (9th Cir. 2017). *Setty*, 771 F. App'x at 457. SS Mumbai sought and obtained certiorari from the Supreme Court, which vacated our prior decision and remanded the case in light of its decision in *GE Energy Power Conversion France SAS v. Outokumpu Stainless USA, LLC*, 140 S. Ct. 1637 (2020), which overruled *Yang. See Setty*, 141 S. Ct. at 83.

## II

Before the panel can answer whether we should reverse the district court's denial of SS Mumbai's motion to compel arbitration on the basis of equitable estoppel, we must first

---

[1] The district court cited to both *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1128 (9th Cir. 2013) (applying California state equitable estoppel doctrine) and *Rajagopalan v. NoteWorld, LLC*, 718 F.3d 844, 847 (9th Cir. 2013) (applying Washington state equitable estoppel doctrine).

resolve the choice of law issue.[2]  The majority asserts federal common law governs.  I disagree.[3]  As we will see, the Supreme Court has made clear that substantive state law governs equitable estoppel claims pursued under Chapter 1 of the FAA.  That the Supreme Court has now ruled that nonsignatories to arbitration agreements governed by the New York Convention may compel arbitration under Chapter 1 of the FAA should not alter that outcome.

---

[2] In *GE Energy*, the Supreme Court noted that the choice-of-law issue remained an open question:

> Because the Court of Appeals concluded that the Convention prohibits enforcement by nonsignatories, the court did not determine whether GE Energy could enforce the arbitration clauses under principles of equitable estoppel or *which body of law governs that determination. Those questions can be addressed on remand.* We hold only that the New York Convention does not conflict with the enforcement of arbitration agreements by nonsignatories under domestic-law equitable estoppel doctrines.

140 S. Ct. at 1648 (emphasis added).

[3] I do agree with the majority, however, that we should not credit the choice-of-law provision within the Partnership Deed to resolve the threshold issue of what law governs the equitable estoppel claim because SS Mumbai has yet to show the Partnership Deed is enforceable by nonsignatory SS Mumbai against the signatory Plaintiff-Appellees. *See In re Henson*, 869 F.3d 1052, 1059 (9th Cir. 2017) (holding that the choice-of-law provision would not govern an equitable estoppel claim to compel arbitration under the FAA because the signatory and nonsignatory "never agreed" to be governed by the choice-of-law provision).

## A

### 1

The FAA ensures covered arbitration agreements are held "valid, irrevocable, and enforceable." 9 U.S.C. § 2. We have held that this substantive mandate permits federal substantive law rather than state law to govern certain issues arising in litigation involving the FAA, most notably, the scope of arbitration provisions. *Tracer Research Corp. v. Nat'l Envtl. Servs. Co.*, 42 F.3d 1292, 1294 (9th Cir. 1994) ("[T]he scope of the arbitration clause is governed by federal law.").

That said, federal substantive law does not govern all questions arising under the FAA. The FAA did not "alter background principles of state contract law regarding the scope of agreements (including the question of who is bound by them)." *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630 (2009). Rather, application of "traditional principles of state law" is permitted under Chapter 1 of the FAA to "allow a contract to be enforced by or against nonparties to the contract through assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel."[4] *Id.* at 631 (citations omitted).

---

[4] FAA Chapter 1, Section 2 reads:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing

And so, for arbitration agreements entered into in the United States, federal courts have been required to apply "relevant state contract law" and not federal common law to the issue whether a nonsignatory may compel arbitration under a theory of equitable estoppel. *Id.* at 632 ("We hold . . . that a litigant who was not a party to the relevant arbitration agreement may invoke [Chapter 1 of the FAA] if the relevant state contract law allows him to enforce the agreement."); *GE Energy*, 140 S. Ct. at 1643 ("Chapter 1 of the Federal Arbitration Act (FAA) permits courts to apply state-law doctrines related to the enforcement of arbitration agreements.").

Since *Arthur Andersen*, the Ninth Circuit has repeatedly applied state contract law any time a nonsignatory has sought to compel arbitration under Chapter 1 of the FAA. In *Kramer v. Toyota Motor Corp.*, we acknowledged that "[t]he United States Supreme Court has held that a litigant who is not a party to an arbitration agreement may invoke arbitration under the FAA if the relevant state contract law allows the litigant to enforce the agreement. We therefore look to California contract law to determine whether . . . a nonsignatory[] can compel arbitration." 705 F.3d 1122, 1128 (9th Cir. 2013) (citing *Arthur Andersen*, 556 U.S. at 632).

We reaffirmed that proposition in *In re Henson*, 869 F.3d 1052 (9th Cir. 2017). There, as here, a nonsignatory defendant sought to compel arbitration against a plaintiff

controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2.

(who had agreed to arbitrate with a third party) under the theory of equitable estoppel. *Id.* at 1056–57.  The Court, in granting a writ of mandamus, held that state law applies to the issue whether equitable estoppel is available, and that when determining which state law governs "whether [a] nonsignatory[] can compel arbitration under the doctrine of equitable estoppel," "we apply the choice-of-law principles of the forum state."  *Id.* at 1059.

Indeed, even this panel has agreed that "[u]nder the FAA, a non-signatory may invoke arbitration *if state law permits*."[5]  *Setty*, 771 F. App'x at 456 (emphasis added).

Thus, under both Supreme Court and our own precedent (including this panel's original decision), equitable estoppel claims pressed by nonsignatories under Chapter 1 of the FAA are governed by state law.  Up until today, we did not need to apply this principle to arbitration agreements governed by the New York Convention.  But with the Supreme Court's decision overruling *Yang*, this is the question now before the panel.

2

"The New York Convention is a multilateral treaty that addresses international arbitration," ensuring that foreign

---

[5] This holding from our panel's previous decision may qualify for "law of the case" enforcement to require the panel to apply state law, not federal law, to the equitable estoppel issue before us. Under the law of the case doctrine, "a court is generally precluded from reconsidering an issue that has already been decided by the same court, or a higher court in the identical case." *Thomas v. Bible*, 983 F.2d 152, 154 (9th Cir. 1993).  The Supreme Court overruled *Yang*, but did not disturb the panel's holding that state law would have applied to the issue absent *Yang*'s preclusion holding.

arbitral awards are recognized in each of the ratifying countries and that foreign-based arbitration agreements are enforceable.[6] *GE Energy*, 140 S. Ct. at 1644.  Congress statutorily implemented the New York Convention within Chapter 2 of the FAA.  9 U.S.C. §§ 201 *et seq.*  In so doing, however, Congress ensured that Chapter 1 of the FAA would still apply to actions and proceedings brought pursuant to arbitration agreements covered by the New York Convention, with exception of any provision within Chapter 1 that conflicts with the New York Convention.  9 U.S.C. § 208; *GE Energy*, 140 S. Ct. at 1644.

In *Yang*, we addressed whether FAA Chapter 1's clause permitting nonsignatories to compel arbitration under equitable estoppel and other traditional contract law theories described in *Arthur Andersen* conflicted with the New York Convention.  *Yang*, 876 F.3d at 1002–03.  We held that it did, and that nonsignatories were barred from using Chapter 1 of the FAA to compel arbitration if the relevant arbitration agreement was governed by the New York Convention.  *Id.* Relying on *Yang*, this panel held in our first decision that because SS Mumbai was a nonsignatory to Balkrishna and Nagraj's Partnership Deed and its arbitration clause, and because that agreement was governed by the New York Convention, SS Mumbai was not entitled to pursue a theory of equitable estoppel that relied on FAA Chapter 1.  *Setty*, 771 F. App'x at 456.

However, the Supreme Court has since overruled *Yang*. The Supreme Court held instead that nothing in the New York Convention conflicted with "the application of

---

[6] A commercial arbitration agreement is governed under the New York Convention and Chapter 2 of the FAA unless it "is entirely between citizens of the United States" and does not reasonably relate to one or more foreign states.  9 U.S.C. § 202.

domestic equitable estoppel doctrines permitted under Chapter 1 of the FAA." *GE Energy*, 140 S. Ct. at 1645–46. Thus, *Yang*'s restriction barring nonsignatories to agreements governed by the New York Convention from compelling arbitration as permitted under Chapter 1 of the FAA has been removed.

## B

On remand, this case raises a question we neither considered nor answered in the earlier appeal: what law applies to equitable estoppel claims pursued under Chapter 1 of the FAA for those arbitration agreements governed by the New York Convention. This is not a difficult issue, but it is the basis for this dissent.

Pursuant to *GE Energy*, nonsignatories to New York Convention-governed arbitration agreements are now authorized to compel arbitration using domestic contract law doctrines. In ruling that the New York Convention did not conflict with this provision of FAA Chapter 1, *GE Energy* merely removed an obstacle that had prevented application of existing FAA Chapter 1 doctrine. *GE Energy* did not alter the familiar framework of *Arthur Andersen*, *Kramer*, or *In re Henson* in any way.

I would hold, simply, that whether a particular contract is governed by the New York Convention or not, an equitable estoppel claim to compel arbitration is brought pursuant to FAA Chapter 1, which requires that state contract law (or in the case of a foreign contract, the foreign state's contract law) governs the issue.

After all, it is under the provisions of Chapter 1 of the FAA that nonsignatories are permitted to compel arbitration using equitable estoppel. Neither the New York Convention

nor Chapter 2 of the FAA speak to the issue. *See GE Energy*, 140 S. Ct. at 1645 ("[N]othing in the text of the [New York] Convention conflicts with the application of domestic equitable estoppel doctrines permitted under Chapter 1 of the FAA." (citations omitted)). We have already held that Chapter 1 of the FAA directs that the domestic background principles of contract law—*i.e.*, state contract law—govern that question for U.S.-based agreements. *See supra* § II.A.1. I see no reason to hold that settled FAA Chapter 1 law should somehow apply differently to nonsignatories of agreements otherwise governed by the New York Convention.**[7]**

Here, the relevant contract law that governs the Partnership Deed should govern SS Mumbai's equitable estoppel claim. But the majority holds that federal law governs because the contract is also subject to FAA Chapter 2. According to the majority, we should impose federal law on foreign-based parties to arbitration agreements and ignore

---

**[7]** Our previous decision in *Casa del Caffe Vergnano S.P.A. v. ItalFlavors, LLC* is worth distinguishing. 816 F.3d 1208 (9th Cir. 2016). There, we examined whether an international arbitration agreement governed by the New York Convention was a valid contract; the issue did not involve nonsignatories seeking to compel arbitration by way of domestic contract doctrines. In determining choice of law, we stated: "Because this case arises under Chapter 2 of the Federal Arbitration Act, the issue of whether the Commercial Contract constituted a binding agreement is governed by federal common law." *Id.* at 1211. That holding is inapplicable here. First, unlike the issue in *ItalFlavors*, whether a nonsignatory may compel arbitration under principles of equitable estoppel is governed by Chapter 1 of the FAA, even if the arbitration agreement is governed by Chapter 2 and the New York Convention. *See GE Energy*, 140 S. Ct. at 1643. Second, *ItalFlavors* was decided prior to the Supreme Court's decision in *GE Energy*, which guides our analysis here. Indeed, when *ItalFlavors* was decided, *Yang* still barred non-signatory litigants from even raising claims pursuant to FAA Chapter 1 if the arbitration agreement was governed by the New York Convention.

the domestic contract law upon which the particular arbitration agreement was formed.

## C

The majority holds that federal, not state, substantive law governs "the arbitrability of federal claims by or against nonsignatories to an arbitration agreement."  For that proposition, the majority relies on a single case: *Letizia v. Prudential Bache Securities, Inc.*, 802 F.2d 1185 (9th Cir. 1986).  In attempting to distinguish Ninth Circuit and Supreme Court holdings to the contrary, the majority asserts that for claims brought pursuant to federal question jurisdiction, federal substantive law always governs the dispute and all attendant issues, and that those cases cited by the dissent are inapplicable simply because they were brought pursuant to diversity jurisdiction.

The majority's reliance on *Letizia* is misplaced.  *Letizia* was a securities fraud case decided in 1986 wherein Letizia, who had invested in Prudential Bache and signed an arbitration agreement with that defendant, sued Prudential Bache as well as Prudential Bache's nonsignatory employees for fraud. *Id.* at 1186–87.  The nonsignatory employees sought arbitration under the agreement that Letizia and Prudential Bache signed.  The Ninth Circuit determined that federal substantive law applies to the question of whether the nonsignatories may enforce that agreement:

> "Because the issue involves the arbitrability of a dispute, it is controlled by application of federal substantive law rather than state law.

> *Bayma v. Smith Barney, Harris Upham & Co.*, 784 F.2d 1023, 1025 (9th Cir. 1986)."

*Letizia*, 802 F.2d at 1187.

The majority cites to *Letizia* for the proposition that all issues arising in arbitration disputes are governed by federal substantive law, but adds in a qualifier not present in *Letizia*'s holding: limiting *Letizia* only to cases where the complaint alleges federal rather than state law claims. To be sure, the FAA provides a substantive mandate ensuring the "enforceability of arbitration agreements" and that in applying this mandate, we are applying "substantive federal law." *Arthur Andersen*, 556 U.S. at 630. However, as discussed above, the Supreme Court has in effect abrogated *Letizia*'s broad holding by making clear that the FAA does not allow federal courts to apply federal common law to all questions in disputes involving arbitration. The Supreme Court stated quite clearly that "state law . . . is applicable to determine which contracts are binding under § 2 and enforceable under § 3 if that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally." *Id.* at 630–31. The majority's reliance on *Letizia* to hold otherwise is entirely inconsistent with the Supreme Court's holding in *Arthur Andersen*.

The majority provides no support for its holding that subject matter jurisdiction dictates whether federal or state substantive law governs claims to compel arbitration by way of domestic contract law theories permitted under Chapter 1 of the FAA. *Letizia* itself held that *all* issues involving the arbitrability of a dispute are controlled by federal substantive law. *See Letizia*, 802 F.2d at 1187. It did not differentiate between cases brought pursuant to federal question or diversity jurisdiction.

The majority is correct that *In re Henson*, *Kramer*, *Arthur Andersen*, and *GE Energy* were brought pursuant to diversity jurisdiction and concerned state law claims. However, neither the Supreme Court nor the Ninth Circuit has ever relied on the subject matter jurisdiction or the nature of the claims in holding that state law governs equitable estoppel under FAA Chapter 1. That claimed distinction is novel to the majority. Without supporting authority or any reasoned consideration as to why it should make a difference, we should not elevate this distinction without a difference to override more recent, consistently applied Supreme Court and Ninth Circuit FAA Chapter 1 precedent.

## III

Had we held that the substantive law of the relevant state or country, rather than federal law, applies to SS Mumbai's claim for equitable estoppel, the next step would have been to perform a choice-of-law analysis to determine which domestic law governs this claim. In choosing which law to apply, the first question would have been whether federal or state choice-of-law principles apply. The next step would have been to apply the correct principles to the facts of the case. I would remand to the district court to resolve these determinations in the first instance, but I suspect that application of Indian contract law would be the result.

## A

Determining which choice-of-law principles govern is typically resolved according to the nature of the claim and the subject matter jurisdiction of the case. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). Federal question jurisdiction is met for Plaintiff-Appellees' trademark claims under federal trademark law, with supplemental jurisdiction over the pendant state law claims.

Federal courts apply the choice-of-law rules of the forum state for claims brought pursuant to diversity and supplemental jurisdiction. *Destiny Tool v. SGS Tools Co.*, 344 F. App'x 320, 321 (9th Cir. 2009) ("When a federal court exercises supplemental jurisdiction over state law claims, it applies the choice-of-law rules of the forum state. The same is true when a federal court sits in diversity." (citations omitted)).

For federal question jurisdiction, there is some inconsistency as to whether federal courts should apply federal common law choice-of-law principles or the choice-of-law principles of the forum state when the particular issue is governed by substantive state law. For bankruptcy cases founded on federal question jurisdiction, we have opted to use federal choice-of-law rules to determine which state law to apply to pendent state claims. *In re Lindsay*, 59 F.3d 942, 948 (9th Cir. 1995) ("In federal question cases with exclusive jurisdiction in federal court, such as bankruptcy, the court should apply federal, not forum state, choice of law rules."). Outside of bankruptcy, however, when the particular issue is ultimately determined by state rather than federal law (as here), the Ninth Circuit and the lower courts have sometimes applied the forum state's choice-of-law rule. *See S.E.C. v. Elmas Trading Corp.*, 683 F. Supp. 743, 748 (D. Nev. 1987), *aff'd w/o opinion*, 865 F.2d 265 (9th Cir. 1988) ("If one of the purposes of *Erie* was to avoid this unwieldy body of federal common law, and to assure that substantive matters of purely state interest are decided by state law, it thus seems logical to use the state choice of law rules here, rather than to look to federal common law. This policy leads the Court to apply the rule of *Klaxon* to cases founded upon federal question jurisdiction where state law controls the issue to be decided."); *Paracor Fin., Inc. v. Gen. Elec. Capital Corp.*, 96 F.3d 1151, 1164 (9th Cir. 1996)

("The first step in interpreting the clause is to apply the correct choice-of-law rules.  In a federal question action where the federal court is exercising supplemental jurisdiction over state claims, the federal court applies the choice-of-law rules of the forum state—in this case, California." (citing *Elmas Trading Corp.,* 683 F. Supp. at 747–49)).

Resolution of this question does not appear to be necessary, as I suspect that under either the choice-of-law principles of the forum state or federal common law, Indian contract law applies.

1

If we were to apply state choice-of-law principles, we would look to the law of the forum in which the court is located.  *Paracor*, 96 F.3d at 1164.  "After a transfer pursuant to 28 U.S.C. § 1404(a), the transferee district court generally must apply the state law that the transferor district court would have applied had the case not been transferred." *Shannon-Vail Five Inc. v. Bunch*, 270 F.3d 1207, 1210 (9th Cir. 2001).

This action was transferred under 28 U.S.C. § 1404(a) from the Northern District of Alabama to the Western District of Washington.  Thus, we would apply the choice-of-law rules of the state of Alabama.

At issue before the panel is whether the application of the relevant state contract law (equitable estoppel) would allow a nonsignatory to compel arbitration against a signatory to an arbitration contract.  Therefore, the conflict-of-law principles governing contract disputes are applicable. "Alabama applies the traditional doctrine[] of *lex loci contractus* to contract claims . . . . The doctrine states that a

contract is governed by the laws of the state where it is made . . . ."  *Colonial Life & Acc. Ins. Co. v. Hartford Fire Ins. Co.*, 358 F.3d 1306, 1308 (11th Cir. 2004) (citing *Cherry, Bekaert & Holland v. Brown*, 582 So. 2d 502, 506 (Ala.1991); *Fitts v. Minn. Mining & Mfg. Co.*, 581 So. 2d 819, 820 (Ala. 1991)).

The Deed of Partnership itself states it was "made and entered into at Mumbai[, India] on December 24, 1999," and this fact is undisputed by the parties.  Thus, using Alabama choice-of-law rules, the issue of equitable estoppel would likely be determined under the laws of India—if indeed there is a doctrine of equitable estoppel in India—where the contract was made.

2

Were we to use federal choice-of-law principles, we would "follow[] the approach of the Restatement (Second) of Conflict of Laws."  *Cassirer v. Thyssen-Bornemisza Collection Found.*, 862 F.3d 951, 961 (9th Cir. 2017).  The Second Restatement lists factors relevant to the choice of law determination:

> (a) the needs of the interstate and international systems; (b) the relevant policies of the forum; (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue; (d) the protection of justified expectations; (e) the basic policies underlying the particular field of law; (f) certainty, predictability and uniformity of result; and (g) ease in the determination and application of the law to be applied.

Restatement (Second) of Conflict of Laws § 6 (Am. L. Inst. 1971). Sections 187 and 188 further guide how the general choice-of-law principles stated in Section 6 are applicable to issues of contract, providing that, absent a valid choice-of-law clause in a contract, the forum with "the most significant relationship to the transaction and the parties" should govern. Section 188(2) further breaks down the factors to consider in making that determination:

> (a) the place of contracting; (b) the place of negotiation of the contract; (c) the place of performance; (d) the location of the subject matter of the contract; and (e) the domicil, residence, nationality, place of incorporation and place of business of the parties.

Moreover, "[i]f the place of negotiating the contract and the place of performance are in the same state, the local law of this state will usually be applied." *Id.* § 188(3).

It is undisputed that the Setty brothers negotiated and entered into the Partnership Deed in India. In agreeing to continue operating their father's incense manufacturing firm in Mumbai, the Setty brothers also performed their partnership contract in India. Both brothers are of Indian nationality and were domiciled in India at the time of contract (indeed, both brothers continue to be domiciled in India). The Partnership Deed "was formed under the laws of India." The clear, justified expectation of all parties to the Partnership Deed was that it was to be governed under Indian law. Even the nonsignatory parties to this appeal—SS Mumbai and SS Bangalore—are both Indian companies owned by the two Indian brother signatories to the Partnership Deed, and manufacture the same goods governed by and pursuant to the Partnership Deed.

Indeed, nothing in the facts suggest any forum apart from India had any relationship whatsoever with the Partnership Deed. It would appear to me that India is the forum with the most significant relationship to the Partnership Deed and that the traditional principles of Indian contract law may very well govern whether a signatory may be compelled to arbitrate with a nonsignatory over an issue arising from that contract.

## B

At this point, however, significant uncertainty remains. The parties did not discuss in their briefs any of the key issues remaining in this analysis, including the existence and contours of India's equitable estoppel doctrine and how would it apply to the facts of this case. The parties should be granted the opportunity to brief and argue this point of law. I would remand the case to the district court to resolve the equitable estoppel claim in the first instance, along with any potential factual disputes that might be necessary to make that decision.

## IV

Because SS Mumbai's motion is brought pursuant to Chapter 1 of the FAA, the Supreme Court and Ninth Circuit precedents governing this question should be adequate to resolve this issue. Indeed, before the panel is a familiar question: what law governs a claim by a nonsignatory to compel arbitration using domestic equitable estoppel under FAA Chapter 1? The Supreme Court in *Arthur Andersen* determined that a litigant who was not a party to an arbitration agreement may invoke Chapter 1 of the FAA "if the relevant state contract law allows him to enforce the agreement." 556 U.S. at 632. Therefore, I would hold that claims to compel arbitration under Chapter 1 of the FAA are

governed by the domestic contract law of the relevant state or country, regardless whether the arbitration agreement is primarily governed by FAA Chapter 1 or the New York Convention.

I would remand the case back to the district court to resolve in the first instance which choice-of-law principles should be used to determine which contract law should govern the equitable estoppel issue, apply the principles, and resolve the equitable estoppel issue.

I respectfully dissent.